**Martti WUORI, et al., Plaintiffs,**

v.

**Kevin CONCANNON, et al., Defendants.**

**Civ. No. 75-80 P.**

United States District Court,
D. Maine.

Aug. 6, 1982.

Helen A. Bailey, Neville Woodruff, Michael Asen, and Michael Feldman, Pine Tree Legal Assistance, Portland, Me., for plaintiffs.

William H. Laubenstein, William C. Nugent, Karen G. Kingsley, Asst. Attys. Gen., Augusta, Me., for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

Neville Woodruff, Esq., Helen M. Bailey, Esq., and the Mental Health Law Project

(MHLP) through its staff attorney, Jane Bloom Yohalem, Esq., counsel for plaintiffs, each seek an award of attorney's fees and costs pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, for their services in implementing a July 1978 consent decree entered in the above-entitled action. Four motions are before the Court, supported by affidavits and detailed timesheets. Defendants oppose all motions. A hearing has been held and counsel have submitted written and oral arguments. To the extent hereinafter set forth, counsel's requests for attorney's fees and costs are granted.

## I.

### Background of the Case

This action was brought in July 1975 on behalf of plaintiffs, a class of mentally retarded Maine citizens, under 42 U.S.C. § 1983 against the Maine Commissioner of Mental Health and Corrections, the Supervisor of Pineland Center (the state institution for the mentally retarded), and other state officials, for alleged violations of constitutional and statutory rights to be free from harm and to receive certain habilitative services. On July 14, 1978 the parties entered into a consent decree which set forth a comprehensive plan for upgrading Pineland Center and developing a network of community facilities and programs to serve the mentally retarded. The consent decree called for the Court to retain jurisdiction over the matter for a two-year period and for the appointment of a Special Master for a two-year term to oversee implementation of the decree. On July 21, 1978, the Court appointed David Gregory as the Special Master for a two-year term.

On June 2, 1980 plaintiffs moved for reappointment of the Special Master for another two-year term. Plaintiffs contended the office of Special Master was essential to the effective implementation of the decree. Defendants opposed the reappointment on the ground that they had achieved "substantial compliance" with the decree objectives and therefore the continued supervision of a master was unnecessary. After hearing on July 1, 1980, the Court extended for an additional two years its jurisdiction over the case, and temporarily reappointed Special Master Gregory. The Court also scheduled an evidentiary hearing in November 1980 on the issue of whether continuation of the Special Master's office for an additional two-year term was required.

In the fall of 1980 counsel advised that the scheduled evidentiary hearing might be continued because it appeared they could agree on a stipulated resolution of the dispute. Several months of negotiations ensued, and ultimately, on January 14, 1981, counsel executed a Stipulation Agreement, which recognized the substantial progress made by defendants in meeting the requirements of the decree, identified areas in which defendants were not in compliance, and set forth specific plans to remedy those deficiencies. Pursuant to the Stipulation Agreement, on January 14, 1981, the Court ordered continuation of the office of Special Master until July 1, 1982 and appointed Lincoln Clark to the office.

On September 18, 1981, after notice and hearing, the Court discharged Pineland Center from its jurisdiction pursuant to the recommendation of the Special Master, joined in by all parties and counsel. The Court's jurisdiction over the implementation of the decree as it pertained to the development of community facilities was unaffected by the discharge of Pineland Center.

Attorney's fees have been awarded in this case for work done by plaintiffs' counsel in several prior periods. On April 9, 1979 the Court approved a stipulation of the parties, by which defendants agreed to pay plaintiffs $90,000 in full settlement of all claims for attorney's fees and costs for the period March 1, 1975 to January 2, 1979. On December 15, 1980, the Court approved a second stipulation, under which defendants agreed to pay attorney Woodruff $13,680.00 and attorney Bailey $2,320.00 in attorney's fees for the period January 2, 1979 through June 30, 1980.

Presently before the Court are four motions for attorney's fees and costs for legal services performed in subsequent periods:

(1) The first motion seeks $38,076.25 to compensate attorney Woodruff for approximately 550 hours of legal work and $13,380.00 to pay attorney Bailey for 274.-25 hours of representation during the period July 1, 1980 to January 14, 1981. In addition, costs in the amount of $4,230.05 are sought for this period, bringing the total amount requested to $55,686.30.

(2) The second motion requests fees and costs in the total amount of $10,221.39 for the period January 14, 1981 through September 18, 1981. Of that total, $4,655.00 is sought to compensate attorney Woodruff for approximately 82 hours of legal work; $5,060.00 for attorney Bailey's 127.5 hours of legal work; and $506.39 for costs.

(3) The third motions prays for an award of $14,775.00 in fees to the MHLP for 197 hours of legal work provided by attorney Yohalem between January 2, 1979 and July 1, 1980. In addition, it seeks to recover $1,969.73 in expenses.

(4) The fourth motion seeks an award of $13,200 to the MHLP for 176 hours of legal work provided by attorney Yohalem between July 14, 1980 and October 20, 1980, when attorney Yohalem and the MHLP withdrew from the case. The motion also requests $2,594.24 in expenses.

Defendants object both to the propriety of any awards and to the amounts requested. Defendants also object to any award of costs or expenses.

## II.

### Entitlement to Attorney's Fees

■ Under 42 U.S.C. § 1988, the Court has discretion to award a "reasonable attorney's fee" to the "prevailing party" in an action such as this one brought to vindicate civil rights under 42 U.S.C. § 1983. *White v. New Hampshire Department of Employment Security,* 679 F.2d 283 at 285 (1st Cir.1982); *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). "A plaintiff who succeeds on 'any significant issue in litigation which achieves some of the benefits [he] sought in bringing suit' may be considered a prevailing party for these purposes, even if vindication of his rights is achieved through a consent decree or without formal relief." *Id.* There is no question that plaintiffs were "prevailing parties" in the underlying action, which resulted in the 1978 consent decree. Plaintiffs' counsel have been awarded attorney's fees for that achievement. Defendants have also voluntarily paid plaintiffs' counsel attorney's fees for some post-judgment work: the MHLP through January 1, 1979, and Woodruff and Bailey through June 30, 1980. Defendants now, however, strenuously contest counsel's entitlement to any additional fees for their subsequent efforts in assuring compliance with the consent decree.

Neither Section 1988 nor its legislative history expressly authorizes an award of attorney's fees for post-judgment services rendered to implement a judgment. A principal purpose of the Attorney's Fees Award Act, however, was to ensure protection of rights despite inability to afford legal representation; "citizens must have the opportunity to recover what it costs them to vindicate those rights in court." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2–3, *reprinted in* 1976 U.S.Code Cong. & Adm.News, 5908, 5909–10.

■ Although the First Circuit has not considered whether and to what extent an award of attorney's fees may be made for post-judgment legal services, other courts have consistently concluded that services necessary for reasonable monitoring of a consent decree are compensable under Section 1988. *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624, 637 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). *See, e.g., Miller v. Carson,* 628 F.2d 346, 348 (5th Cir.1980); *Stenson v. Blum,* 512 F.Supp. 680, 684 (S.D.N.Y.1981); *Peacock v. Drew Municipal Separate School District,* 433 F.Supp. 1072, 1076–77 (N.D.Miss.1977), *aff'd,* 611 F.2d 1160 (5th Cir.1980); *McPherson v. School District # 186,* 465 F.Supp.

749, 752–54 (S.D.Ill.1978); *Dowell v. Board of Education,* 71 F.R.D. 49 (W.D.Okla.1976). This Court concurs with the rule adopted by these cases that where a plaintiff is a "prevailing party" in a Section 1983 action, and obtains a decree, whether after trial or by consent, and where the plaintiff's attorney's subsequent services devoted to reasonable monitoring of the decree are necessary to enforce the decree and to ensure full implementation of plaintiff's rights, those subsequent services are compensable under Section 1988. *Northcross v. Board of Education of Memphis City Schools, supra,* 611 F.2d at 637. Such an approach is consistent with the purpose of the Fees Award Act, and is necessary to ensure effective vindication of a plaintiff's rights.

With limited exceptions, the services performed by plaintiffs' attorneys during the periods covered by the present motions clearly fall within the rule of the above cases:

## A. *Attorneys Woodruff and Bailey*

In their two motions, attorneys Woodruff and Bailey seek compensation for their services in implementing the consent decree from July 1, 1980 through September 18, 1981. The supporting affidavits and timesheets show that during the period covered by their first motion, July 1, 1980 to January 14, 1981, Woodruff and Bailey devoted nearly all of the time for which they now seek compensation to obtaining reappointment of the Special Master for an additional two-year term. The issue was raised by plaintiffs' motion for the Special Master's reappointment filed in June 1980. In opposing the motion, defendants asserted they were in substantial compliance with the 1978 consent decree and argued that, therefore, a court-appointed monitor was unnecessary. To meet defendants' arguments, plaintiffs' counsel had to investigate the status of defendants' compliance efforts to date. Such a task inevitably required extensive fact-gathering, discovery, and research in preparation for the scheduled November 1980 evidentiary hearing, and, later, negotiations and drafting. The January 14,

1981 Stipulation Agreement, which resolved this controversy, specifically called for the continuation of the Special Master's office. The Stipulation Agreement also specifically identified the areas in which defendants were not in compliance with the decree, and set forth a detailed timetable and plans for correction. The record establishes beyond contravention that the efforts of plaintiffs' counsel were a "necessary and important factor," *Nadeau v. Helgemoe, supra,* 581 F.2d at 281, in continuing the Special Master's office and in assuring defendants' commitment to comply with their legal obligations under the decree. Counsel are entitled to be paid therefor.

The supporting affidavits and timesheets show that during the period covered by their second motion, January 14, 1981 through September 18, 1981, virtually all work billed by Woodruff and Bailey was done pursuant to their duties under the January 1981 Stipulation Agreement. As defendants concede, the Stipulation Agreement itself contemplated the participation of plaintiffs' attorneys in implementing the plans of correction outlined therein. From its examination of the record, the Court is satisfied that counsel's efforts were reasonably necessary to secure compliance, were not frivolous or superfluous, and did make a substantial and important contribution to the achievement of benefits sought under the 1978 consent decree. *See Nadeau v. Helgemoe, supra,* 581 F.2d at 281. The services thus rendered are compensable.

## B. *The MHLP (Attorney Yohalem)*

The two motions filed by attorney Yohalem on behalf of the MHLP seek compensation for services in implementing the consent decree from January 2, 1979 through October 20, 1980, when Yohalem and the MHLP withdrew from the case. Counsel's affidavits and timesheets show that during the period covered by the first motion, January 2, 1979 to July 1, 1980, the MHLP through Yohalem contributed its nationally recognized expertise in litigation to secure the rights of the mentally retarded toward the successful resolution of a num-

ber of significant issues concerning implementation of the consent decree. For example, a formal request for findings and recommendations which plaintiffs' counsel submitted to the Special Master on February 26, 1979, led to a commitment by defendants to increase staffing at Pineland Center to ensure the health and safety of the residents. Action by plaintiffs' counsel in pursuing reported noncompliance with decree requirements at Pineland Center instigated negotiations between the parties which resulted in defendants' commitment to reorganize staffing, hire new professional staff, remedy fire hazards, improve resident transportation to the clinic, and adopt safety measures for residents. The efforts of plaintiffs' counsel in advocating a method of funding resulted in a negotiated agreement which materially enhanced defendants' financial ability to implement the consent decree in an effective manner. The record establishes that the MHLP's work on these questions contributed substantially to defining problems, creating solutions to those problems, and effectuating the solutions. These services were a necessary and important factor in achieving benefits mandated by the decree. The MHLP is entitled to be compensated therefor.

■ The supporting affidavits and timesheets show that during the period covered by the MHLP's second motion, July 14, 1980 through October 20, 1980, Yohalem actively participated in preparing the evidence to be presented at the scheduled November 1980 hearing on plaintiffs' motion for reappointment of the Special Master. There can be no question that the expertise of Yohalem and the MHLP significantly assisted plaintiffs' local counsel. The work done by Yohalem during this period included planning and executing extensive discovery; acquiring and interviewing experts to assess Pineland Center and community programs; touring Pineland Center and community facilities and interviewing staff in preparation for the hearing; and simultaneously pursuing a negotiated settlement with defendants. Although Yohalem and the MHLP withdrew as counsel one month before the scheduled hearing and did not participate in the final negotiations that culminated in the January 14, 1981 Stipulation Agreement, the record is persuasive that the work done by Yohalem in preparation for the anticipated hearing and her participation in the preliminary negotiations laid the groundwork for the Stipulation Agreement and materially contributed to the ultimate settlement. MHLP's unexplained withdrawal from the case may require some reduction in the amount of the requested compensation. But the Court is satisfied that the services rendered by Yohalem and the MHLP during the period covered by the second motion were necessary and important to the achievement of benefits under the decree, and are compensable.

## III.

### Amount of Attorney's Fees

In computing the appropriate fee to be awarded under Section 1988, the First Circuit has prescribed the following procedure.

First, a "lodestar" fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. Second, the "lodestar" is adjusted up or down to reflect factors, such as the contingent nature of success in the lawsuit or the quality of legal representation, which have not *already* been taken into account in computing the "lodestar" and which are shown to warrant the adjustment by the party proposing it.

*Miles v. Sampson,* 675 F.2d 5, 8 (1st Cir. 1982) (original emphasis); *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980). *See also Copeland v. Marshall,* 641 F.2d 880, 890–92 (D.C.Cir.1980) (en banc). The amount of the counsel's fee award "should be based on the work performed on the issues in which they were successful." *Miles v. Sampson, supra,* 675 F.2d at 8, *quoting Nadeau v. Helgemoe, supra,* 581 F.2d at 279.

■ The starting point of this calculation, the so-called "lodestar" figure, requires the court to separate work done ac-

cording to the levels of expertise of the attorneys involved; eliminate time "beyond that consistent with a standard of reasonable efficiency and productivity"; and assign hourly rates "for the kinds of work done by those at different levels of expertise." *Furtado v. Bishop, supra,* 635 F.2d at 920. The court may reduce or exclude time which is not specifically documented; is duplicative of other services; or proves inconsistent with other billings. *Id.* at 922; *Souza v. Southworth,* 564 F.2d 609, 612 (1st Cir.1977). Furthermore, in setting a reasonable hourly rate the court must consider the relative degree of experience and expertise of counsel as well as the particular kind of work performed. *Miles v. Sampson, supra,* 675 F.2d at 8; *Furtado v. Bishop, supra,* 635 F.2d at 920, 922; *Copeland v. Marshall, supra,* 641 F.2d at 892.

The First Circuit also has adopted a list of twelve factors to be considered by the district courts in arriving at a reasonable fee award:

1) the time and labor required; 2) the novelty and difficulty of the question presented; 3) the skill required to perform the legal services; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limita-

tions imposed by client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; 12) awards in similar cases.

*King v. Greenblatt,* 560 F.2d 1024, 1026–27 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

Once a lodestar figure is determined, the Court must consider whether any adjustment is necessary. The First Circuit has made clear that this step is a "residual category that is relevant only when the parties point out factors that do not easily fit into the initial calculation of the lodestar." *Furtado v. Bishop, supra,* 635 F.2d at 924. The burden of justifying departure from the lodestar norm is upon the party proposing the adjustment. *Id.; Copeland v. Marshall, supra,* 641 F.2d at 892.

With these general principles in mind, the Court now turns to the individual requests.

A. *Attorney Woodruff*

The fees sought by attorney Woodruff in his two motions break down as follows: First motion (July 1, 1980 to January 14, 1981):

| | | |
|---|---|---|
| 339 hours "trial preparation services," | $75/hour | $25,425 |
| 211 hours "other legal services," | $60/hour | 12,660 |
| 550 hours — | | $38,085 |

Second motion (January 15, 1981 to September 18, 1981):

| | | |
|---|---|---|
| 82 hours "Stipulation Agreement services," | $60/hour | 4,920 |
| Total — | | $43,005 |

Woodruff has submitted to the Court affidavits and timesheets containing a detailed record of the time spent on the case and the duties performed, including the dates and nature of the work done. *See King v. Greenblatt, supra,* 560 F.2d at 1027.

1. *Hours reasonably expended.* In order to obtain an appropriate "lodestar"

fee, the Court must first determine the number of hours reasonably expended by Woodruff which were necessary and important in implementation of the 1978 consent decree. An examination of the supporting affidavits and timesheets satisfies the Court: (1) that the 339 hours claimed for trial preparation services, all of which were

rendered between July 1, 1980 and November 7, 1980, were reasonably expended in preparation for the anticipated November 1980 evidentiary hearing; (2) that the 211 hours claimed for other legal services between July 1, 1980 and January 14, 1981, were reasonably expended in legal work on other aspects of the case, primarily in negotiations leading to the January 1981 Stipulation Agreement and reappointment of the Special Master; and (3) that the 82 hours claimed for Stipulation Agreement services during the period from January 15, 1981 to September 18, 1981, were reasonably expended in services rendered pursuant to obligations imposed upon plaintiffs' counsel by the January 1981 Stipulation Agreement. Accordingly, with the limited exceptions listed in the margin,[1] the Court concludes that all such services were necessary and important for implementation of the 1978 consent decree, and are properly compensable.

The Court has considered and rejects defendants' objections to various aspects of Woodruff's claim. Defendants' first objection is that they should not be required to pay for time devoted to work related to Pineland Center, such as tours, staff interviews and document review. The Court is satisfied that this time was reasonably necessary to address the issues raised by defendants' opposition to the reappointment of the Special Master, an issue on which plaintiffs prevailed. The Court is also satisfied that the time devoted to monitoring Pineland Center was reasonable and necessary to "ensure that the plan [was] indeed working." *Northcross v. Board of Education of Memphis City Schools, supra,* 611 F.2d at 637. Defendants next object that the efforts of attorneys Woodruff, Bailey and Yohalem were duplicative. Defendants point to several areas in which they contend duplicative billing is found: *viz.,* joint telephone conversations, attendance at court conferences, attendance at meetings, attendance at depositions, and presence at tours of facilities. The affidavits submitted by plaintiffs' counsel show that the work performed by them was carefully divided in such a way as to avoid duplication. *Compare Furtado v. Bishop, supra,* 635 F.2d at 922–23. Nor, in view of the complex nature of this litigation, does the Court deem it unnecessary for plaintiffs' counsel to have appeared as a team in court and at conferences, negotiating sessions and depositions. Indeed, defendants customarily were represented by two or three attorneys on these occasions.

After detailed analysis of the supporting affidavits and timesheets, the Court finds that the number of hours reasonably expended by attorney Woodruff in services which were necessary and important to implementation of the 1978 consent decree during the period of time covered by his two present motions is as follows:

1. The Court excludes as not compensable, because not directly related to implementation of the 1978 consent decree or required by the January 1981 Stipulation Agreement, the following hours billed by Woodruff:

(1) Time billed for work related to the so-called *Pennhurst* case, then pending before the United States Supreme Court, *see* 3/24/82 Woodruff Affidavit: entries at July 21, 23, 28; August 21, 26; December 29, 1980 — 8.25 hours

(2) Time billed for press contacts, *see id.*; 10/9/81 Woodruff Affidavit: entries at January 13, 14; February 9, 11; August 7, 1981 — 4 ”

(3) Time billed for work related to the so-called Helen Hodge case, *see* 10/9/81 Woodruff Affidavit: entries at July 21, 22, 30, 1981 — 2.25 ”

(4) Time billed concerning possible joinder as a defendant of the Maine Department of Human Services, *see id.*: entries at July 29, 30, 1981 — 4 ”

(5) Time billed for CAB address, *see id.*: September 17, 18, 1981 — 1.75 ”

(6) Time billed for negotiations re MHLP withdrawal from the case, *see* 3/24/82 Woodruff Affidavit: entries at September 23, 24, 25, 26, 28; October 2, 3, 1980 — 33 ”

Total — 53.25 ”

| | | |
|---|---|---|
| "Trial preparation services" | 339 | hours |
| "Other legal services" | 211 | " |
| "Stipulation Agreement services" | 82 | " |
| | 632 | " |
| Less excluded hours | − 53.25 | " |
| Total— | 578.75 | hours |

2. *Reasonable hourly rate.* To obtain a lodestar fee, the Court must next determine a reasonable hourly rate. Woodruff has requested the Court to award $75 an hour for trial preparation work, $60 an hour for other (nontrial) legal services, and $20 an hour for clerical work.

 In determining a reasonable hourly rate, the Court must first analyze the type of service rendered by counsel. *See Miles v. Sampson, supra,* 675 F.2d at 9; *Furtado v. Bishop, supra,* 635 F.2d at 920, 922; *Copeland v. Marshall, supra,* 641 F.2d at 892. Services which constitute "legal work, in the strict sense," should be compensated at a higher level than other types of work. *King v. Greenblatt, supra,* 560 F.2d at 1027. In the instant case, the following activities fall within this category: drafting pleadings, legal documents, and legal memoranda; researching legal issues and preparing briefs; preparing for court appearances; negotiating with opposing parties and counsel; court appearances; organizing and preparing trial testimony; preparing interrogatories and document requests; preparing for and taking depositions. Such services may be compensated at the highest appropriate rate. *See Copeland v. Marshall, supra,* 641 F.2d at 891–92; *King v. Greenblatt, supra,* 560 F.2d at 1027.

 Work involving investigation and compilation of data and statistics is not strictly legal work, and therefore should be compensated at a lower rate. *See King v. Greenblatt, supra,* 560 F.2d at 1027. In the present case, such services include touring the various facilities; interviewing staff; reviewing reports and correspondence; conferences among co-counsel and with the Special Master. These services do not merit the premium rate charged for strict legal work. *See Miles v. Sampson, supra,* 675

F.2d at 9; *Copeland v. Marshall, supra,* 641 F.2d at 892.

 Finally, time necessarily devoted by counsel to "clerical" or "paralegal" work, such as filing documents, while compensable, should be compensated at a still lower rate. *See King v. Greenblatt, supra,* 560 F.2d at 1027; *Palmigiano v. Garrahy,* 466 F.Supp. 732, 742 (D.R.I.1979), *aff'd,* 616 F.2d 598 (1st Cir.1980). The fact that such work was performed by an attorney should not affect the rate. *Id.*

The Court's analysis of the types of services rendered by Woodruff during the period covered by his two motions is as follows:

| | | |
|---|---|---|
| Primary legal services | 222 | hours |
| Secondary legal services | 334.5 | " |
| Clerical/paralegal services | 22.25 | " |
| Total— | 578.75 | " |

Having classified the types of service rendered by counsel, the Court must next determine the appropriate hourly rate to be allowed for each type of service. The Court's analysis is guided by the criteria set forth in *King v. Greenblatt, supra,* 560 F.2d at 1026–27. The record shows that Woodruff has been a practicing lawyer for over ten years, and has worked extensively in civil rights litigation; in the instant case, he has demonstrated exceptional skill and expertise (factor # 9). The time and labor required by this litigation has been substantial; the case has occupied a major portion of his practice since 1975 (factors # 1, # 4 and # 7). The case has presented novel, complex and difficult legal issues (factors # 2 and # 3). The supporting affidavits show that the requested rate of $75 per hour for primary legal work is consistent with the rate customarily charged in the community for such services rendered by an attorney of Woodruff's experience and skill (factor # 5). The efforts of plaintiffs' counsel, especially Woodruff, have secured substantial benefits for the plaintiff class (factor # 8). The requested $75 hourly rate appears to be consistent with awards in similar cases (factor # 12). Based upon

these considerations, the Court is persuaded that the requested rate of $75 an hour for primary legal work is justified and fair.

While it is impossible to fix a precise hourly rate for the secondary services rendered by counsel, in view of the importance of the work done, the Court deems a rate of $50 an hour is appropriate. For counsel's clerical or paralegal work, a rate of $15 an hour will be allowed.

Based upon the foregoing, the "lodestar" fee for the services performed by attorney Woodruff from July 1, 1980 to September 18, 1981 is computed as follows:

| Number of Hours | | x | Hourly Rate | = | Lodestar |
|---|---|---|---|---|---|
| 222 | hours | | $75 | | $16,650 |
| 344.5 | " | | $50 | | 16,725 |
| 22.25 | " | | $15 | | 333.75 |
| | | | Lodestar Amount — | | $33,708.75 |

Counsel have suggested no consideration which would require any adjustment of the lodestar amount. Attorney Woodruff will, therefore, be awarded $33,708.75 for services rendered by him during the period covered by his two present motions.

| 120.5 hours "trial preparation services" | $60/hour | $ 7,230 | |
| 153.75 hours "other legal services" | $40/hour | 6,150 | |
| 274.25 hours | | | $13,380 |

## B. Attorney Bailey

In her two motions attorney Bailey seeks the following fees:

First motion (July 1, 1980 to January 14, 1981):

Second motion (January 15, 1981 to September 18, 1981):

| 125.5 hours "Stipulation Agreement services" | $40/hour | 5,020 | |
| 2 hours "clerical/paralegal services" | $20/hour | 40 | |
| | | | 5,060 |
| Total — | | | $18,440 |

Bailey has submitted to the Court affidavits and timesheets containing a detailed record of the time spent on the case and the duties performed, including the dates and nature of the work done. *See King v. Greenblatt, supra,* 560 F.2d at 1027.

1. *Hours reasonably expended.* An examination of the supporting affidavits and timesheets satisfies the Court that the 120.5 hours claimed for trial preparation services, all of which were rendered between July 1, 1980 and November 7, 1980, in preparation for the anticipated November 1980 evidentiary hearing, were reasonably expended in services which were necessary and important for that purpose, and are properly compensable. The Court is similarly satisfied that, with the exception noted in the margin,[2] the 153.75 hours claimed for other legal services rendered between July 1, 1980 and January 14, 1981, were reasonably expended in services which were necessary and important for the implementation of the consent decree, and are also properly compensable. Of the latter, the time billed for the period from September 1980 to January 14, 1981 was devoted to necessary and extensive fact-gathering, research, and negotiations, which culminated in the January

2. There is a discrepancy of 8.75 hours between the hours claimed in Bailey's motion (274.25 hours) and the total hours listed in her March 24, 1982 supporting affidavit (265.5 hours). The 8.75-hour excess will be disallowed.

14, 1981 Stipulation Agreement continuing the Special Master's office and incorporating defendants' commitment to comply with their legal obligations under the decree. The Court is also satisfied that the 127.5 hours billed for the period from January 15, 1981 to September 18, 1981 were devoted to services reasonably rendered pursuant to the obligations imposed upon plaintiffs' counsel by the January 1981 Stipulation Agreement, for which counsel is entitled to compensation.

Defendants' objections to various aspects of Bailey's claim are the same as those made to portions of Woodruff's claim. They have been considered and rejected by the Court for the reasons previously stated in overruling defendants' similar objections to Woodruff's claim.

After detailed analysis of the supporting affidavits and timesheets, the Court finds that the number of hours reasonably expended by attorney Bailey in services that were necessary and important to implementation of the 1978 consent decree during the period of time covered by her two present motions is as follows:

| | |
|---|---|
| "Trial preparation services" (July 1, 1980 to November 7, 1980) | 120.5 hours |
| "Other legal services" (July 1, 1980 to January 14, 1981) (153.75 hours less 8.75 hours) | 145 hours |
| "Stipulation Agreement services" (January 15, 1981 to September 18, 1981) | 127.5 hours |
| Total— | 393 hours |

2. *Reasonable hourly rate.* Bailey has requested the Court to award $60 an hour for trial preparation work, $40 an hour for other (nontrial) legal services, and $20 an hour for clerical work. Once again, in determining a reasonable hourly rate, the Court first must differentiate the types of service rendered by counsel and then, guided by the criteria set forth in *King v. Greenblatt, supra,* 560 F.2d at 1026–27, determine the appropriate hourly rate for each type of service.

The Court's analysis of the types of service rendered by Bailey during the period covered by her two motions is as follows:

| | |
|---|---|
| Primary legal services | 123.25 hours |
| Secondary legal services | 254.00 " |
| Clerical/paralegal services | 15.75 " |
| Total— | 393 hours |

The record shows that Bailey has been a practicing lawyer for over four years; in the instant case, she has demonstrated exceptional skill and expertise (factor # 9). The time and labor required of her by this litigation has been substantial; the case has occupied a major portion of her practice since her initial appearance (factors # 1, # 4 and # 7). As previously noted, the case has presented novel, complex and difficult legal issues, to the resolution of which she has made a substantial contribution (factors # 2 and # 3). The litigation has secured substantial benefits for the plaintiff class (factor # 8). The supporting affidavits show that the requested rate of $60 per hour for primary legal work is consistent with the rate customarily charged in the community for such services rendered by an attorney of Bailey's experience and skill (factor # 5). The requested $60 hourly rate appears to be well below awards in similar cases (factor # 12). Based upon these considerations, the Court is persuaded that the requested rate of $60 an hour for primary legal work is justified and fair. The Court further deems the requested rate of $40 an hour to be a reasonable rate for the secondary legal services rendered by Bailey. For her 15.75 hours clerical or paralegal work, a rate of $15 an hour will be allowed.

Based upon the foregoing, the "lodestar" fee for the services performed by attorney Bailey from July 1, 1980 to September 18, 1981 is computed as follows:

| Number of Hours | x | Hourly Rate | = | Lodestar |
|---|---|---|---|---|
| 123.25 hours | | $60 | | $ 7,395 |
| 254 " | | $40 | | 10,160 |
| 15.75 " | | $15 | | 236.25 |
| Lodestar Amount — | | | | $17,791.25 |

Counsel have suggested no consideration which would require any adjustment of the lodestar amount. Attorney Bailey will, therefore, be awarded $17,791.25 for services rendered by her during the period covered by her two present motions.

## C. *The MHLP (Attorney Yohalem)*

The two motions filed by attorney Yohalem on behalf of the MHLP seek the following fees:

First Motion (January 2, 1979 to July 1, 1980)
197 hours $75/hour $14,775
Second Motion (July 14, 1980 to October 20 1980)
176 hours $75/hour $13,200
373 hours $27,975

Yohalem has submitted to the Court affidavits and timesheets containing a detailed record of the time spent on the case and the duties performed, including the dates and nature of the work done. *See King v. Greenblatt, supra,* 560 F.2d at 1027.

1. *Hours reasonably expended.* An examination of the supporting affidavits and timesheets satisfies the Court that the 197 hours claimed for legal services rendered by Yohalem between January 2, 1979 and July 1, 1980 were reasonably expended in services which were necessary and important in implementation of the 1978 consent decree, and are properly compensable. The record shows that the time billed during this period was spent by Yohalem in analyzing and researching a variety of complex issues, drafting legal papers, consulting with co-counsel, meeting with the Special Master and defendants, attending court, and negotiating with defendants concerning issues arising under the consent decree and special problems relating to services for mentally retarded persons. The Court is similarly satisfied that the 176 hours billed for legal services rendered by Yohalem between July 14, 1980 and October 20, 1980, when MHLP withdrew from the case, were reasonably spent in services which were necessary and important in preparation for the anticipated November 1980 evidentiary hearing on reappointment of the Special Master, for which counsel is entitled to be paid. The affidavits and timesheets show that the work done by Yohalem during this period in preparation for the November 1980 hearing included planning and conducting necessary discovery, arranging for on-site visits by qualified experts, conferring with local counsel on trial strategy, preparing negotiation strategy, and drafting a proposed remedy. It cannot be questioned that the special expertise and experience of the MHLP with respect to the special problems involved in dealing with services for mentally retarded persons, and especially on legal issues arising in implementation of court decrees, materially assisted and contributed to the efficiency of plaintiffs' local counsel in assuring implementation of the consent decree.[3]

Defendants object to several aspects of the MHLP claim. Their first objection is that they should not be required to pay for time billed by Yohalem for travel between Washington, D.C. and Portland, Maine. The Court accepts, however, the representation in Yohalem's affidavits that she has included only travel hours during which work was performed on the present case and that hours spent merely traveling or working on other matters have not been included.

Defendants next object that the services rendered by Yohalem duplicated those furnished by plaintiffs' local counsel. The Court also rejects this objection. The supporting affidavits and timesheets disclose that Yohalem and local counsel conscientiously divided responsibility between them in order to avoid duplication of effort. As local counsel, Woodruff and Bailey monitored defendants' progress, did the bulk of the work on day-to-day issues, and conducted most of the meetings with defendants, the Special Master and potential witnesses in Maine. The MHLP, through Yohalem, provided expertise on legal issues involving the implementation of court decrees and the special problems of dealing with mentally retarded persons. Yohalem attended meetings and court hearings at which local counsel also were present only when the MHLP's expertise in mental retardation

---

**3.** Yohalem's supporting affidavit relates that much of her work was completed with the assistance of other lawyers on the staff of the MHLP, but that none of the time spent by other MHLP staff has been included in the billing. Yohalem has also excluded from MHLP's claim time spent and expenses incurred during the period of time her motion to withdraw from the case was pending.

was called for or when requested to do so by the Special Master or the Court. The Court is persuaded that the joint presence of attorneys in these instances was necessary in order to adequately represent the interests of the plaintiff class.

█ Finally, defendants object to time billed by the MHLP for the two meetings with representatives of the American Federation of State, County and Municipal Employees (AFSCME) on December 18, 1979 and May 9, 1980, and time billed on June 4 and 5, 1980 for research on zoning issues. The Court rejects both objections. The record shows that the two meetings with representatives of the AFSCME were devoted to questions directly related to the instant case and that the time devoted to consideration of zoning issues involved the legal question of what action, if any, the 1978 consent decree required defendants to take when a local zoning ordinance excluded a group home planned under the terms of the decree.

After detailed analysis of the supporting affidavits and timesheets, the Court finds that the number of hours reasonably expended by attorney Yohalem in services that were necessary and important to implementation of the 1978 consent decree during the period of time covered by her two present motions is 373 hours.

2. *Reasonable hourly rate.* The MHLP has requested the Court to award $75 an hour for the legal services rendered by attorney Yohalem. Once again, in determining a reasonable hourly rate, the Court first has differentiated between the types of service rendered by counsel and then has applied the criteria set forth in *King v. Greenblatt, supra,* 560 F.2d at 1026–27, to fix an appropriate hourly rate for each type of service.

The Court's analysis of the types of service rendered by Yohalem during the period covered by her two motions is as follows:

| | | |
|---|---|---|
| Primary legal services | 54.25 | hours |
| Secondary legal services | 318.75 | hours |
| Total— | 373 | hours |

The Court is satisfied that the MHLP should be allowed to charge $75 an hour for the primary legal services rendered by Yohalem: those services which were "legal, in the strict sense." *King v. Greenblatt, supra,* 560 F.2d at 1027. The record shows that for the past four years Yohalem has worked full-time as a staff attorney for the MHLP, a public interest law firm which has been involved directly or in a backup capacity in major test case litigation on behalf of the mentally ill and the mentally retarded; she has acquired substantial experience, and, in the instant case, has demonstrated exceptional skill and expertise (factor # 9). The time and labor required of her by this litigation have been substantial and have occupied a substantial portion of her time since she joined the MHLP (factors # 1, # 4, # 7). It cannot be doubted that her expertise in mental retardation has contributed substantially to the resolution of the novel and complex legal issues presented by the case and has materially assisted local counsel in securing the substantial benefits which have been obtained for the plaintiff class (factors # 2, # 3, # 8). The supporting affidavits show that the customary rate charged for work of this nature, "both in and out of court," by an attorney of Yohalem's qualifications is approximately $75 an hour (factors # 5 and # 12). Based upon these considerations, the Court concludes that the requested rate of $75 an hour for primary legal work is justified and fair. The Court will only allow, however, a rate of $50 an hour for the secondary services rendered by Yohalem. This is the rate awarded for such services to attorney Woodruff. Yohalem has substantially less experience than Woodruff, and Woodruff has acted as lead counsel throughout this litigation.

Based upon the foregoing, the "lodestar" fee for the services performed by the MHLP, through attorney Yohalem, from January 2, 1979 to October 20, 1980, is computed as follows:

| Number of Hours | x | Hourly Rate | = | Lodestar |
|---|---|---|---|---|
| 54.25 hours | | $75/hour | | $ 4,068.75 |
| 318.75 hours | | $50/hour | | 15,937.50 |
| Lodestar Amount — | | | | $20,006.25 |

The Court must now consider whether any adjustment to the lodestar fee is required. Although the Court does not doubt that the work undertaken by the MHLP during the summer and early fall of 1980 aided the efforts of plaintiffs' local counsel in preparing for the anticipated November 1980 evidentiary hearing and in effecting the ultimate settlement represented by the January 1981 Stipulation Agreement, the MHLP has never satisfactorily explained its abrupt withdrawal from the case on the eve of the scheduled hearing and during a critical phase of the settlement negotiations. In these circumstances, the Court, in its discretion, deems it appropriate, as defendants urge, to reduce the calculated lodestar fee by $2,006.25. The MHLP will, therefore, be awarded $18,000 for services rendered by attorney Yohalem during the period covered by her two present motions.

## IV.

### Costs and Expenses

Plaintiffs seek to recover the following costs and expenses incurred during the periods of time for which attorney's fees are sought by their present motions:

#### Woodruff and Bailey

| | |
|---|---|
| Photocopying | $ 62.24 |
| Telephone | 687.80 |
| Attorney travel | 1,049.65 |
| Expert witness fees | 700.00 |
| Deposition expense | 2,236.75 |
| Total— | $4,736.44 |

#### MHLP

| | |
|---|---|
| Telephone | 685.48 |
| Attorney travel | 2,924.81 |
| Expert consulting fees | 600.00 |
| Expert travel | 353.68 |
| Total— | $4,563.97 |

Defendants do not dispute that the amounts of the foregoing costs and expenses or that they were reasonably and necessarily incurred by plaintiffs' counsel in connection with legal services rendered on behalf of the plaintiff class. Defendants contend, however, that the costs and expenses sought by plaintiffs are not recoverable because they are not specifically authorized by 28 U.S.C. § 1920 as taxable costs. The Court disagrees.

There are two separate sources of authority for an award of costs and expenses to the prevailing party in civil rights litigation. First, although the question is not clearly addressed by the Fees Award Act, the legislative history of that Act leaves no doubt that Congress intended that attorney's fees "would include ... all incidental and necessary expenses incurred in furnishing effective and competent representation." See, for example, remarks of Congressman Drinan, 122 Cong.Rec. 35123 (1976). Recognizing this overriding congressional purpose, the courts have, with very few exceptions, concluded that the authority granted in Section 1988 to award a "reasonable attorney's fee" includes the authority to award "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Northcross v. Board of Education of Memphis City Schools, supra,* 611 F.2d at 639; *Wheeler v. Durham Board of Education,* 585 F.2d 618, 623–24 (4th Cir.1978); *Fairley v. Patterson,* 493 F.2d 598, 606 n. 11 (5th Cir.1974); *Swift v. Blum,* 502 F.Supp. 1140, 1148 (S.D.N.Y.1980); *Population Services International v. Carey,* 476 F.Supp. 4, 8 (S.D.N.Y.1979). *See also Palmigiano v. Garrahy, supra,* 466 F.Supp. at 744; *Guajardo v. Estelle,* 432 F.Supp. 1373, 1388 (S.D. Tex.1977), *aff'd,* 580 F.2d 748 (5th Cir.1978). *But see Entertainment Concepts, III, Inc. v. Maciejewski,* 514 F.Supp. 1378, 1382 (N.D. Ill.1981); *Vecchione v. Wohlgemuth,* 481 F.Supp. 776, 798–99 (E.D.Pa.1979). Reasonable photocopying, travel and telephone costs are thus recoverable pursuant to the statutory authority of Section 1988. *Id.* Second, while some courts have concluded that "those costs incurred by a party to be paid to a third party, not the attorney for the case, ... cannot reasonably be considered to be attorney's fees" recoverable under Section 1988, *see Northcross v. Board of Education of Memphis City Schools, supra; Wheeler v. Durham Board of Education, supra,* recovery of these expenses has been allowed, in the court's discretion, as

costs pursuant to 28 U.S.C. § 1920. *See, e.g., Northcross v. Board of Education of Memphis City Schools, supra.* The fees and expenses of experts and deposition expenses are thus recoverable, in the Court's discretion, as costs pursuant to 28 U.S.C. § 1920. *Id.*

Being satisfied that the out-of-pocket expenditures made by plaintiffs' counsel were reasonable and necessary, the Court will allow an award of the costs and expenses requested by plaintiffs in the amount of $4,736.44 for attorneys Woodruff and Bailey, and $4,563.97 for the MHLP.

## V.

## ORDER

In accordance with the foregoing, the Court makes the following awards of attorney's fees and costs to plaintiffs' counsel:

| | | |
|---|---:|---:|
| Neville Woodruff | | |
| Attorney's fees | $33,708.75 | |
| Helen Bailey | | |
| Attorney's fees | 17,791.25 | |
| Neville Woodruff and Helen Bailey | | |
| Costs and expenses | 4,736.44 | |
| Total — | | $56,236.44 |
| MHLP | | |
| Attorney's fees | 18,000.00 | |
| Costs and expenses | 4,563.97 | |
| Total — | | $22,563.97 |

IT IS SO ORDERED.