**Thomas G. BROUSSARD, Jr. and Laura A. Broussard**

v.

**CACI, INC–FEDERAL, et al.**

**Civ. No. 83–0170 P.**

United States District Court, D. Maine.

Feb. 21, 1986.

Michael A. Feldman, Glover & Feldman, Brunswick, Me., William Cowin, Friedman & Atherton, Boston, Mass., for plaintiffs.

George Z. Singal, Minsky, Mogal & Singal, Bangor, Me., Jeffrey P. Elefante, CACI, Inc-Federal, Arlington, Va., Virginia G. Watkin, Covington & Burlington, Washington, D.C., Joseph H. Groff, III, Asst. U.S. Atty., Portland, Me., for defendants.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES AND COSTS

GENE CARTER, District Judge.

This case comes before this Court on the motions of Defendants CACI, Inc.-Federal ("CACI"), Andrew Blackwell ("Blackwell") and Michael Holshey ("Holshey") for an award of attorneys' fees and costs from Plaintiff Thomas G. Broussard, Jr. ("Broussard"), pursuant to Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) (1976).

Following his termination of employment, Broussard brought a ten-count action against the Defendants. This action included sex discrimination claims against CACI, Blackwell and Holshey (Count III), and against Blackwell and Holshey (Count IV), all pursuant to 42 U.S.C. § 2000e–2(a). Plaintiff also brought claims for breach of contract, misrepresentation, wrongful discharge and negligent infliction of emotional distress, each of which has now been disposed of in favor of Defendants. With regard to the sex discrimination claims at issue in this case, this Court entered an order on February 28, 1985, 104 F.R.D. 613, granting summary judgment to Defendants Blackwell and Holshey on Plaintiff's claims against them contained in Counts III and IV. With respect to the remaining portion of Count III concerning sex discrimination claims against CACI, the parties stipulated to dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(ii) on June 5, 1985.

CACI, Blackwell and Holshey subsequently filed motions for attorneys' fees under 42 U.S.C. § 2000e–5(k), which reads:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

### I.

The Supreme Court has held that a prevailing plaintiff in a Title VII action may recover his attorney's fees in all but special circumstances. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975). However, in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Court held that a prevailing defendant in a Title VII action must meet a more stringent test in order to qualify for an award of attorney's fees. The Court stated:

[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

*Id.* at 421, 98 S.Ct. at 700. The Court noted that the term "'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case ..." *Id.* Therefore, the Court should avoid "post hoc reasoning" based simply upon the plaintiff having not prevailed; and it also should refrain from liberally granting defendants' attorney's fee motions, lest it "discourage all but the most airtight claims." *Id.* at 421–22, 98 S.Ct. at 700. *See also Arnold v. Burger King Corp.*, 719 F.2d 63, 65 (4th Cir.1983).

Also, the *Christiansburg* Court recognized that "while Congress wanted to clear the way for suits to be brought under the Act, it also wanted to protect defendants from burdensome litigation having no legal or factual basis." *Id.*, 434 U.S. at 420, 98 S.Ct. at 699–700. Broussard's claims of gender discrimination against these three Defendants, disposed of through summary judgment and dismissal, clearly lacked any legal or factual basis.

Plaintiff was hired by CACI in May 1981 as "site coordinator" for CACI's operations in Bath, Maine. At the time, CACI served as a subcontractor to the United States Navy, and CACI employees worked closely

with Navy civil servants in Bath. According to various deposition testimony, the working relationship between CACI employees and the civil servants of the Navy in Bath was very sensitive and troublesome. Wilkes Deposition at 37–39; Clanton Deposition at 62–63. Moreover, Broussard, among others, was well aware of the tension between civil servants and subcontractors. For instance, at one point in his deposition Broussard states:

> ... the civil service up there are—are not partial to contractor participation, much less contractor leadership. You know, they are not looking for somebody like myself or anybody from CACI or any of the contractors to come in and say, "This is how you do your business and this is how we'll do it better because we need to achieve NAVMAT goals."

Broussard Deposition at 437; *see also* Fullerton Deposition at 6–8; Hogan Deposition at 8–10; Oikle Deposition at 6–9; Laura Broussard Deposition at 20–21.

On May 4, 1982, an article was published in a local newspaper, carrying a photograph of Broussard and excerpts from an interview with him. The article immediately aroused the ire of Navy civil servants, who felt it did not fairly give credit to Navy civil servants for their contribution to the project. Broussard Deposition at 622. The following day CACI terminated Broussard's employment and replaced him with a female, Patricia Renshaw, citing the article as a cause of increased tension with the civil servants. Broussard Deposition at 647–48.

Not only was Plaintiff told by civil servants that the article had heightened the tension, but he also stated at his own deposition that he believed he was terminated because of the substance of the article and the resulting pressure from Navy personnel. At pages 422–23 of Broussard's deposition, the following exchange takes place:

Q  Did you believe Mr. Blackwell when he told you the reason for your termination?

A  I couldn't figure out any other.

Q  That is the reason you think you were terminated, because of Katz's demands.

A  Because Comdr. Katz demanded that I be fired. Again, I can't come up in my wildest dreams with any other reason.

And it's been corroborated. Mr. Blackwell told me that, the people he talked to told me that, Mr. Thomas told me that.

Q  So you believe that's the reason.

A  Yes, sir. In my heart of hearts I believe that is the reason.

Q  And that is your position.

A  That I was fired because of pressure from Comdr. Katz.

Q  *Because of that article.*

A  *Yes, sir.*

(Emphasis added.)

Despite the clear impact which the published interview had on employee relations and Plaintiff's own admission concerning the basis of his termination, Plaintiff has persisted in a groundless attempt to portray the firing as gender-induced.

Plaintiff cites to his own deposition on several occasions to relate instances in which employees allegedly accused Defendant Blackwell of committing sexual harassment. Nevertheless, Plaintiff himself noted at his deposition that three of these examples were not germane to his own action against Blackwell. Broussard Deposition at 359, 364 and 448. Moreover, such allegations also fail to disprove the clear basis for the termination acknowledged in Plaintiff's own deposition: that he was dismissed because of the increased tension arising from the newspaper article.

Plaintiff also asserts that his own firing was merely an example of Blackwell's desire to hire more women in supervisory positions; he also contends that his replacement, Patricia Renshaw, was not qualified for the position for which she was hired.

Plaintiff's allegations in these matters, however, are entirely without merit. Broussard refers to an instance in which Blackwell allegedly stated he would hire a woman to supervise the other female em-

ployees "if I ever had to do this all over again." Broussard Deposition at 417, 705. The alleged statement, however, preceded the Plaintiff's actual dismissal by several months, shows little more than an abstract frustration on Blackwell's part, and fails to support an otherwise frivolous claim, particularly given the lack of additional evidence offered by Plaintiff on the matter. Plaintiff's offer of additional evidence on Blackwell's attitudes towards women as "more loyal," Wilkes Deposition at 98, and "not mechanically oriented," Wilkes Deposition at 95, contribute nothing to an assessment whether Broussard himself was the victim of Blackwell's supposed preference for female employees. Moreover, in no respect does the evidence offered by Plaintiff serve to disprove the assertion made by Broussard at his own deposition: namely, that his dismissal stemmed directly from the publication of the newspaper article.

The Court also concludes that Plaintiff's claim that the newspaper article was mere pretext for an alternative and improper basis for his firing also is frivolous. Plaintiff claims Patricia Renshaw was incompetent, and that he was replaced by her solely because she is a woman. Nevertheless, prior instances of friction between Plaintiff and civil servant employees took place with no action taken against Plaintiff by Blackwell. Broussard Deposition at 603–607. Had Blackwell been seeking a pretext to dismiss Plaintiff merely so as to hire a woman, he had opportunities prior to the actual dismissal. Furthermore, given the clear impact which the Plaintiff's newspaper interview had on employee relations, mere assertions that Renshaw was not as qualified as Plaintiff, and that Blackwell allegedly wanted to place a woman in the position to ease tensions, fail to provide sufficient grounds for the claims as required by *Christiansburg*.

Therefore, the Court concludes that the Plaintiff's action based on a Title VII claim of gender discrimination was frivolous, unreasonable, or without foundation.

## II.

By motion filed August 23, 1985, Defendant CACI seeks attorneys' fees of $15,799.75 and disbursement costs of $1,600.69 for the work performed in defense of the Title VII counts of the Complaint. On the same day, Defendants Blackwell and Holshey filed a similar motion for $2,990 in attorneys' fees and $38.63 in costs. Both motions were signed by attorney George Singal, who appeared as litigating counsel for all three Defendants.

The Supreme Court has provided a basis for determining the level of attorney's fees to which a prevailing party is entitled when it is authorized for such an award. Said the Court:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983).

In *Miles v. Sampson*, 675 F.2d 5, 8 (1st Cir.1982), the First Circuit set out the following procedure for determining such an award:

> First, a "lodestar" fee is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the lawsuit. Second, the "lodestar" is adjusted up or down to reflect factors, such as the contingent nature of success in the lawsuit or the quality of legal representation, which have not *already* been taken into account in computing the "lodestar" and which are shown to warrant the adjustment by the party proposing it.

(Original emphasis.)

This District expanded upon this framework in *Wuori v. Concannon*, 551 F.Supp.

185 (D.Me.1982). In *Wuori*, Judge Gignoux noted that the Court initially should determine a lodestar fee by separating the tasks performed in a case according to the level of expertise of the lawyers performing such functions, eliminating inefficient or unproductive time spent, and setting different hourly rates according to the expertise required for different tasks. *Id.* at 192–193. The Court also is empowered to reduce or exclude time which is not sufficiently documented or which is needlessly duplicative. *Id. See also Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984).

The First Circuit previously has set out a number of factors to be considered by a court in determining a reasonable fee award:

> (1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

*King v. Greenblatt,* 560 F.2d 1024, 1026–27 (1st Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), cited in *Wuori v. Concannon,* 551 F.Supp. at 193. In *Eckerhart,* the Supreme Court noted that most of these additional factors listed in *Greenblatt* and in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974), "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. at 434, n. 9, 103 S.Ct. at 1940, n. 9, 76 L.Ed.2d at 51, n. 9.

The Court has discretion to adjust the initial lodestar figure of reasonable hourly rates and hours if the parties " 'point out factors that do not easily fit into the initial calculation of the lodestar'." *Furtado v. Bishop,* 635 F.2d 915, 924 (1st Cir.1980), quoted in *Wuori v. Concannon, supra,* 551 F.Supp. at 193.

Turning to the questions at hand, affidavits accompanying the CACI motion indicate that attorney George Singal accumulated $7,109.75 in legal fees and $1,150.12 in costs, while attorney Virginia Watkin generated $5,700 in fees and $412.57 in costs. The separate motion of Defendants Blackwell and Holshey contains an affidavit of attorney John Boese, claiming attorney's fees on behalf of Defendants of $2,990 and costs of $38.63.

Both motions for attorneys' fees are incomplete in several respects. The CACI motion, signed by attorney Singal, seeks $15,799.75 in fees, while the accompanying affidavits indicate only $12,809.75 in fees accumulated by attorneys Singal and Watkin. Since Mr. Singal also apparently has served as counsel for Defendants Blackwell and Holshey, it is unclear whether the discrepancy between the amount requested in the CACI motion and the amount of fees and costs specified in the affidavits stems from Mr. Singal's additional work on behalf of the individual Defendants or whether it represents an *additional* request for the fees generated by attorney Boese and set out in the Blackwell and Holshey motion.

The affidavits accompanying the CACI motion also fail to specify whether the work of one attorney was duplicative of work performed by the other. *Wuori v. Concannon,* 551 F.Supp. at 198. Both Mr. Singal and Ms. Watkin itemize the amount of hours expended and nature of work performed in defense of the Title VII claim, but each affidavit fails to demonstrate that the work of two attorneys from two different offices, in the apparent defense of only one client, was not needlessly redundant.

Finally, the motion of Defendants Blackwell and Holshey, again signed by attorney Singal and with an accompanying affidavit of attorney Boese, is far from sufficient in its description of the work performed. Mr. Boese makes no effort to describe the

amount of hours spent in defense of the two individuals, the nature of the work performed, the rate charged for such work, or the nature of the disbursement costs incurred. Moreover, Mr. Singal fails to indicate why two separate motions for attorneys' fees are required, and whether the earlier work of Mr. Boese on behalf of Blackwell and Holshey made subsequent preparation by attorneys Watkin and Singal on behalf of CACI unnecessary or duplicative.

As the Court stated, *supra*, Defendants have demonstrated that they are entitled to an award of attorneys' fees, under the standards enunciated in *Christiansburg*. Nevertheless, this Court is not prepared to grant such an award at this time, absent further documentation of the work performed by each attorney for the Defendants.

For the foregoing reasons, the Court *ORDERS* that Defendants CACI, Blackwell and Holshey, within fifteen (15) days of the date of this Order, submit new, comprehensive and free-standing motions and affidavits, justifying an award of attorneys' fees and costs. Such motions and affidavits shall include the following:

(1) The specific number of hours worked by each of the attorneys, on behalf of each of the three Defendants, in the defense of the Title VII claims of the Complaint;

(2) The rate charged by each attorney for the work described;

(3) The dates on which such work was performed;

(4) The specific tasks performed on those various dates;

(5) For attorneys Singal and Watkin, a. description of tasks performed which indicates whether or not any of the efforts were duplicative;

(6) For attorney Singal, separate documentation for each Defendant he represented as litigation counsel.

Failure of any Defendant to comply with the requirements of this Order will result in the denial, without further notice or proceeding, of any monetary award to such Defendant for attorneys' fees.

So ORDERED.