**Thomas G. BROUSSARD, Jr., et. al.,**
**Plaintiffs, Appellants,**

v.

**CACI, INC.—FEDERAL, et. al.,**
**Defendants, Appellees.**

**No. 85–1648.**

United States Court of Appeals,
First Circuit.

Argued Nov. 14, 1985.

Decided Jan. 2, 1986.

William I. Cowin, with whom Friedman & Atherton, Boston, Mass., was on brief, for appellants.

George Z. Singal, with whom Gross, Minsky, Mogul & Singal, Bangor, Me., Michael

S. Friedman, Jeffrey P. Elefante, Arlington, Va., Virginia G. Watkin, Douglas S. Abel and Covington & Burling, Washington, D.C., were on brief, for appellees.

Before COFFIN and BREYER, Circuit Judges, WYZANSKI,* Senior District Judge.

COFFIN, Circuit Judge.

This is a case of parties entering into a relationship with unarticulated and contradictory assumptions resulting in frustrated expectations. This is also a case which, though terminating in a summary judgment for defendants, 104 F.R.D. 613, has been anything but summary in the quantity of counts pleaded, depositions, affidavits, exhibits, and layers of judicial attention. Accordingly, we shall be brief in indicating the reasons for our affirmance on the judgment below.

The breach of contract count (Count I) began as an allegation that plaintiff was fired in violation of defendant CACI's personnel policies, that he was not given a minimum of three years employment as promised, and that his discharge was in breach of an implied covenant of fair dealing. This set of claims has metamorphosed into a present claim that "the parties entered into an indefinite employment arrangement subject to an understanding that Broussard would not be terminated arbitrarily." (Appellant's brief, p. 17)

■ Under Maine law, "a contract of employment for an *in*definite length of time is terminable at will by either party", *Terrio v. Millinocket Community Hospital*, 379 A.2d 135, 137 (Me.1977) (emphasis in original), unless the parties "clearly stat[e] their intention" in "express terms"

that a discharge shall be only for good cause. *Larrabee v. Penobscot Frozen Foods*, 486 A.2d 97, 99–100 (Me.1984). In the latter case the court made clear that a promise, merely implied, not to fire without good cause, was inadequate. *Id.* at 99.

■ In this case the representations made to plaintiff by CACI—to the effect that CACI would have work in Bath "roughly through 1986", that it was "hiring him for a career ... not ... under the body shop technique", that "there was [sic] no restraints on what he could or could not do professionally and financially with CACI", and that "if he did a good job he would have long-term employment"—do not approach an express undertaking to guarantee that plaintiff could be discharged only for good cause. In the euphoria of initial negotiations, plaintiff's expectations of tenure may well have been reinforced by these representations, but his expectations could not be held to have been created by these representations.

The difference between puffery and promise is preserved by the Maine cases we have cited. Employment negotiations resulting in employment are by definition conducted in an atmosphere of optimism and mutual hope. The air is redolent with expectation of duration on the part of the employee and of satisfactory performance by the employer. But to equate general expressions of hope for a long relationship with an express promise to discharge only for good cause would effectively eliminate Maine's rule, severe though it may be, that contracts for indefinite employment are, without more, terminable at will.[1]

So concluding, we need not address the questions whether the undertaking was unenforceable under the Statute of Frauds or

---

* Of the District of Massachusetts, sitting by designation.

1. According to the author of the note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only In Good Faith*, 93 Harv.L.Rev. 1816 (1980), two-thirds of the American work force is governed by this rule. *Id.* at 1816. Under it, "[e]ven when an employee has reasonable grounds for expecting that some degree of job security was part of the deal,

the at will rule often operates to frustrate her expectations." *Id.* at 1818. Further, "[c]ourts have generally been reluctant to interfere with the parties' 'freedom to contract'; if an employee fails to bargain for an express contractual protection against wrongful discharge, the court will not intervene whether the contract was terminated 'for good cause, for no cause or even for cause morally wrong.'" *Id.* at 1818–19.

whether such a defense was precluded by equitable estoppel. Our silence on these issues, however, does not imply any disagreement with the district court.

The count alleging misrepresentation (Count II) also underwent a permutation, beginning with the allegation that CACI falsely represented that it would have work for plaintiff in Bath, Maine, for at least three years, and ending with the claim that CACI "failed to inform Broussard of the element which could render all the other representations meaningless—i.e., that he could be arbitrarily terminated without recourse ...." (Appellants' brief, p. 24)

The sum total of the testimony relied on to create a genuine issue of misrepresentation, extracted from a 300–page appendix which in turn was distilled from many more hundreds of pages of depositions and affidavits, consists of the following statements: CACI's policy was "plant a garden and then weed it .... and all the cream surfaces to the top"; "All it takes to remove someone ... is if his boss wants to and his boss' boss agrees to it"; and if customers did not like CACI's employees who dealt with them, they—the customers—would have influence in effecting their discharge.

The issue is whether failure to reveal these details of CACI's discharge at will policy is actionable as a half-truth, *Restatement (Second) of Torts* § 529 (1977); or a fraudulent concealment, *id.*, § 550; *Atwood v. Chapman*, 68 Me. 38 (1877); *cf. Horner v. Flynn*, 334 A.2d 194 (Me.1975).

The district court distinguished *Wildes v. Pens Unlimited Co.*, 389 A.2d 837 (Me. 1978), where a putative employer was held liable for concealing from a salesman being hired the fact that a reorganization of the company which would eliminate the salesman's position was then under way. The district court noted the absence of any plan to eliminate plaintiff's position and concluded that "[t]o accept the plaintiffs' argument of a duty to disclose here would require that every employer who hires at will affirmatively state its right to terminate arbitrarily."

■ We do not say that there may not be extreme situations where the record of arbitrary and irresponsible firing is so egregious that failure to disclose it would constitute fraudulent concealment. But there is no such record here. Plaintiff's predecessor was discharged not on a superior's whim but for unsatisfactory performance after several trips by CACI officials had been made to Bath to try to help him. And for CACI, a consulting company dependent on the good will of the government agencies it serves, to be sensitive to customer complaints is not surprising.[2] At worst the nondisclosure in this record is that of a policy hospitable to firing on the complaint of a customer, cushioned against the whim of one person by the requirement that two supervisors join in the action. In other words, the policy is that of discharge at will, taken seriously.

The problem is that, if the nondisclosure described here is held to raise a genuine issue of fraudulent concealment, this would be an open-ended invitation to litigation of the issue in almost every case of a discharge at will. We would not know how to draw a line between failure to state the law of at will discharges—which would not be actionable—and failure to state how a company applies this law—which would be actionable. We therefore hold that the statements we have cited do not constitute sufficiently substantial evidence to create a "genuine" issue of material fact. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

We affirm the judgments on both Counts I and II and, accordingly, do not reach Counts VI and VII, claiming negligent infliction of emotional distress and seeking punitive damages.

*Affirmed.*

---

**2.** The record in the instant case contains extensive deposition testimony that at a minimum the following persons were disturbed by the newspaper article based on plaintiff's interview that caused his firing: a Navy Captain, three Navy Commanders, and six Navy civil servants.