<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1002     

                         DAVID WATKINS,
                      Plaintiff, Appellee,

                               v.

                     J&S OIL COMPANY, INC.,
                     Defendant, Appellant.

                      ____________________

No. 98-1003     

                         DAVID WATKINS,
                     Plaintiff, Appellant,

                               v.

                     J&S OIL COMPANY, INC.,
                      Defendant, Appellee.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MAINE

          [Hon. Morton A. Brody, U.S. District Judge]
        [Hon. Eugene W. Beaulieu, U.S. Magistrate Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

Wellford, Senior Circuit Judge,

                   and Lynch, Circuit Judge.

                     _____________________

    Joseph J. Hahn, with whom Kate S. Debevoise, Glenn Israel and
Bernstein, Shur, Sawyer & Nelson were on brief, for J&S Oil
Company, Inc.
    Cynthia L. Amara and New England Legal Foundation on brief for
the Maine Chamber and Business Alliance and the New England Legal
Foundation, amici curiae.
    Francis M. Jackson, with whom Jackson & MacNichol was on
brief, for David Watkins.

                      ____________________
                      December 30, 1998

                      ____________________

         WELLFORD, Senior Circuit Judge.  Plaintiff David Watkins
was employed as a gas station manager for defendant J&S Oil Co.,
Inc. ("J&S").  In August of 1994, he suffered a heart attack and
subsequently had open heart surgery.  After he had been home on
leave for about two weeks recuperating from surgery, J&S called
Watkins, asked him whether he intended to return to work, and
informed him that he had been replaced in his position as station
manager.  After Watkins had completed the leave, claimed under the
Family and Medical Leave Act ("FMLA"), 29 U.S.C.  2601, et seq.,
he did not return to work for J&S in any capacity.  Watkins sued
J&S pursuant to the FMLA and also the Americans with Disabilities
Act ("ADA"), 42 U.S.C.  12101, et seq., as well as under state
law for infliction of emotional distress.  The district court
granted J&S's motion for summary judgment on both the ADA and the
state law claims, but denied the motion with respect to Watkins's
FMLA claim.  The FMLA claim was tried to a jury, which found in
favor of Watkins.  J&S now appeals the district court's denial of
its motion for summary judgment and its motion to vacate that
judgment.  Watkins appeals the district court's granting of J&S's
motion for summary judgment on the ADA and state law claims.
         At all pertinent times, J&S operated three gas stations
in Maine.  J&S hired Watkins in 1992 as a gas attendant at its
Farmingdale station, although Watkins had informed J&S that he had
previously experienced a heart attack.  In August of 1993, J&S
promoted Watkins to station manager.  During July of 1994, however,
Watkins had another heart attack which caused him to be out of work
for about five weeks.  Despite the second heart attack, he returned
to work with no restrictions.  On September 17, 1994, Watkins
suffered still another heart attack and subsequently underwent
surgery for his condition.
    On October 3, 1994, while Watkins was on leave
recuperating from surgery, the Human Resources Officer for J&S,
Wade Look, called Watkins regarding whether and when Watkins
intended to return to work.  Watkins testified as follows about
that conversation (in part):
         Q.  Okay.  So he asked you, are you
         planning to return to J&S Oil.  What did
         you say to him?

         WATKINS:  Do I still have a position as
         store manager.

         Q.  Okay.  And what was his response?

         WATKINS:  No, you don't.

         Q.  Okay.  Then what.

         WATKINS:  He said, you have been replaced.

         Q.  Okay.  As store manager?

         WATKINS:  Yes, sir.

         Q.  All right.  So still you have the
         question hanging, do you plan to return to
         J&S.  What was your answer to that?

         WATKINS:  I asked him again if my job as
         store manager was available.

         Q.  Okay.  And he said?

         WATKINS:  No.

         Q.  So what did you say?

         WATKINS:  I asked him what he expected me
         to do at this point in time as far as --
         as work, and he said that in order to
         return that he was not going to accept a
         doctor's note, that they would only speak
         to the doctor personally, and that would
         be the only way they would let me return.

At the time of that conversation, Watkins did not, in fact, know
when he would physically be able to return to work.
    Later in October, Watkins was examined by his doctor, but
he could not recall what the doctor had told him regarding his
ability to return to work.  About a month after the third attack,
Look again called Watkins to ask how he was feeling and whether he
intended to return to J&S.  Watkins asked again whether his
position as store manager was available, and Look indicated that it
was not, and Watkins testified as to the following conversation:
         Q.  Did you ask him what jobs there were
         available for you at J&S?

         WATKINS:  No.

         Q.  All right.  Did he tell you what jobs
         were available to you at J&S?

         WATKINS:  He mentioned that there would be
         an office job that I could bid on but was
         not a guarantee that I would get the job.

         Q.  And what was that job?

         WATKINS:  I have no idea.

         Q.  Did that interest you at all?

         WATKINS:  Yes.

         Q.  So did you ask him what the job was?

         WATKINS:  No.

         Q.  Why not?

         WATKINS:  Because he wasn't sure what the
         position exactly was.  There was no job
         description, according to him, at that
         particular point in time.

         Q.  So tell me what you asked him and what
         he told you about that job. . . .  
 
         WATKINS:  That they were expanding and
         that there would be a job available in the
         office and I would be able to bid on it.

         Q.  Did you ever bid on it?

         WATKINS:  No, sir.

         Q.  Is there a reason why you didn't bid
         on it?

         WATKINS:  It never came available between
         that conversation and November 7th.

         Q.  Did you explore that job with him at
         any time?

         WATKINS:  No.

         Q.  Did you ever discuss it again other
         than that two or three little sentences
         you just described?

         WATKINS:  No, sir.

         Q.  Did he discuss any other jobs with
         you?

         WATKINS:  Yes.

         Q.  What other jobs . . . on this
         telephone call? . . .  

         WATKINS:  He said that there was a
         possibility but no guarantees that he
         might be able to put me as a gas attendant
         on third shift in Winslow.

         Q.  Okay.  Did he say anything to you
         about your salary?

         WATKINS:  I asked him was it going to be
         at the same rate of pay and he said no.

         Q.  Okay.  This was what, the Winslow job
         or the office job?

         WATKINS:  The Winslow job.

         Q.  What about the office job?

         WATKINS:  Nothing ever was discussed
         again.

    On November 7, 1994, Look called Watkins a third and
final time to notify Watkins that the company would no longer pay
for his insurance because his leave had then expired, and also to
find out whether Watkins was planning to go back to work.  Watkins
again asked if his store manager job was available, and Look
informed him that it was not.  At that point, Watkins said, "I
think we're going to part company."  Watkins's position at that
point was that he wanted the store manager position or nothing;
Watkins stated that he had decided not to accept any job other than
that of store manager.

             I.  FAMILY AND MEDICAL LEAVE ACT CLAIM
    As indicated above, the district court denied J&S's
motion for summary judgment on the FMLA claim.  Also, the court
denied J&S's motion for a judgment as a matter of law pursuant to
Fed. R. Civ. P. 50(a) which was made during the trial.  The jury
then returned a verdict in Watkins's favor for $43,000, the
stipulated amount of damages.  J&S filed a timely motion to vacate
the judgment on this verdict pursuant to Fed. R. Civ. P. 59(e),
which was also denied.  On appeal, J&S claims that the district
court erred in failing to grant summary judgment on the FMLA claim
and in failing to grant its motion to vacate the final judgment.
    As stated above, the district court defeated all of J&S's
attempts for a favorable decision on the FMLA claim.  J&S failed to
renew its motion for a judgment as a matter of law at the close of
proof, so the denial of that motion is not properly before the
court.  Simon v. Navon, 71 F.3d 9, 13 (1st Cir. 1995).  Since the
case proceeded to trial, denial of the defendant's motion for
summary judgment will not be separately addressed.  Lama v. Borras,
16 F.3d 473, 476 n.5 (1st Cir. 1994).  We shall review the district
court's denial of the motion to vacate the judgment, following the
jury verdict, for an abuse of discretion.  Simon, 71 F.3d at 13
(citing Snchez v. Puerto Rico Oil Co., 37 F.3d 712, 717 (1st Cir.
1994)).
    Pursuant to the FMLA, "an eligible employee shall be
entitled to a total of 12 workweeks of leave during any 12-month
period . . . [b]ecause of a serious health condition that makes the
employee unable to perform the functions of the position of such
employee."  29 U.S.C.  2612(a)(1)(D).  Any employee who takes such
a leave "shall be entitled, on return from such leave -- (A) to be
restored by the employer to the [previous] position . . . or (B) to
be restored to an equivalent position with equivalent employment
benefits, pay, and other terms and conditions of employment."  29
U.S.C.  2614(a)(1)(A), (B); see also Patterson v. Alltel
Information Services, Inc., 919 F. Supp. 500, 504 (D. Me. 1996).  
    In order to establish a prima facie case for a FMLA
violation, a plaintiff must show that (1) he is protected under the
Act; (2) he suffered an adverse employment decision; and (3) either
he was treated less favorably than an employee who had not
requested FMLA leave or the adverse decision was made because of
his request for leave.  Oswalt v. Sara Lee Corp., 889 F. Supp. 253,
259 (N.D. Miss. 1995), aff'd, 74 F.3d 91 (5th Cir. 1996); see alsoDaz v. Fort Wayne Foundry Corp., 131 F.3d 711, 712 (7th Cir. 1997)
(discussing the appropriate burden-shifting in claims brought
pursuant to the FMLA).  It is undisputed that Watkins was an
eligible employee.
    The district court held that hiring someone to replace
Watkins in his former position as station manager did not, in and
of itself, "constitute an adverse employment decision" under FMLA.  
We agree that J&S was not required under the FMLA to return Watkins
to his former management position, which Watkins conceded was a
strenuous job that required at least a fifty-two hour week.  SeeBrown v. J.C. Penny Corp., 924 F. Supp. 1158 (S.D. Fla. 1996); 29
C.F.R.  825.214.  J&S was required, however, to afford him
equivalent work and compensation under the Act.  We construe the
"equivalent" requirement to mean that which is substantially equal
or similar, not necessarily identical or exactly the same.  The
employer may take into account the employee's physical capabilities
in determining the equivalent work and compensation involved.
    Watkins, at the outset, based on his own testimony,
wanted and reiterated his desire to return to his job as store
manager, but he was told that J&S planned to replace him due to the
pressures and needs of J&S's small business operation.  There were
non-specific discussions about other positions and when and if
Watkins was able to return to work.  Watkins asked what J&S
expected him to do in light of the fact that his old position was
no longer available.  J&S raised the possibilities of a potential
office job (that apparently never became available) or a lesser
paying gas attendant job.  Neither job, however, was actually
offered to Watkins, and it is questionable whether either job was
an "equivalent" position for purposes of satisfying the FMLA.  As
indicated above, the district court found that the question of
whether Watkins was offered an equivalent position, giving Watkins
the benefit of the most favorable view of conflicting evidence,
required a jury determination.   
    The district court properly instructed the jury that
Watkins had the burden of proving his case.  See Kaylor v. Fannin
Regional Hospital, 946 F. Supp. 988, 1000 (N.D. Ga. 1996).  The
court then required Watkins to prove by a preponderance of the
evidence each of the following conditions:
    1.   That J&S failed to provide an
         equivalent position with equivalent
         pay and benefits at the end of the
         twelve-week period, using a
         "substantially equivalent"
         definition.

    2.   "[T]hat Watkins was physically able
         to perform essential functions of
         . . . an equivalent position . . .
         at the end of the twelve-week
         period."

    3.   That Watkins "did not voluntarily
         resign."

    4.   That Watkins did not prevent J&S
         from carrying out its FMLA
         obligations by his own "actions or
         inactions."

    J&S moved to vacate the verdict under Rule 59(e) on two
grounds.  It argued that it could not, as a matter of law, be
required to reinstate Watkins because (1) he failed to "return from
[FMLA] leave," as required under 29 U.S.C.  2614(a)(1), and (2) he
"unequivocally advise[d] [J&S] . . . that [he] [did] not intend to
work" and thus was no longer eligible for reinstatement under 29
C.F.R.  825.312(e).
    We address the latter argument first.  Although J&S
styled its motion as one based on "a manifest error of law," it is
clear that the jury's verdict was not based on the erroneous
proposition that an employer is obligated under the FMLA to offer
reinstatement to an employee who has resigned.  Whether Watkins
voluntarily resigned was a question of fact that the jury was
expressly asked to resolve.  The jury apparently found that, under
the circumstances, Watkins's statement, "I think we're going to
part company," was not equivalent to a voluntary resignation but
rather his recognition that J&S refused to offer him reinstatement
to an equivalent position.  Although reasonable minds could
certainly differ, that finding was supported by sufficient
evidence.  We conclude that the district court did not abuse its
discretion in refusing to vacate the verdict on this ground.  SeeLama, 16 F.3d at 477.
    J&S's other argument is equally unavailing.  In essence,
it asks the court to impose a per se rule that an employee is not
eligible for reinstatement unless he or she reports in person to
the employer's place of business at the end of the leave period.  
Nothing in the FMLA supports such a rule.  Section 2614(a)(1)
merely provides that an employee is entitled to reinstatement to
the same or an equivalent position "on return from [FMLA] leave,"
without defining this phrase further.  See 29 U.S.C.  2614(a)(1).
    A Department of Labor regulation addressing the question
"What notice may an employer require regarding an employee's return
to work?" does provide some guidance.  See 29 C.F.R.  825.309.  
Section 825.309 explains that "an employer may require an employee
on FMLA leave to report periodically on the employee's status and
intent to return to work" and that "[FMLA] obligations continue if
an employee indicates that he or she may be unable to work but
expresses a continuing desire to do so."  Id.  A per se rule
requiring employees to show up on the employer's doorstep in order
to be eligible for reinstatement would be contrary to the spirit,
if not the letter, of this regulation.
    The two cases cited by J&S do not constitute authority to
the contrary.  In Lacoparra v. Pergament Home Centers, 982 F.Supp.
213 (S.D.N.Y 1997), the court held that an employee who "never
contacted her employer about reinstatement" was not entitled to
reinstatement.  Id. at 221.  Similarly, the court in Nunes v. Wal-
Mart Stores, 980 F.Supp. 1335 (N.D. Cal. 1997), found that an
employer had no obligation to reinstate an employee who failed to
submit a required leave form and did not stay in contact with her
employer (or even permit her employer to stay in contact with her,
since she changed her address and phone number without informing
the employer).  Neither Lacoparra nor Nunes imposed a per se rule
that an employee can only "return from leave" by physically
presenting himself or herself at the employer's place of business,
and we decline to impose one here.
    J&S's suggestion does direct our attention to an
uncertain area of FMLA law, namely, who bears the burden of
initiating contact:  does the employer have an affirmative
obligation to contact the employee in order to ascertain the
employee's intentions and to offer the employee reinstatement, or
does the employee (even in the absence of specific directives from
the employer pursuant to 29 C.F.R.  825.309) have a duty to
contact the employer to seek reinstatement?  This is a different
question than whether the employee must physically return to the
workplace, and one we need not decide here, because it was
undisputed that Watkins and J&S were in contact at the end of
Watkins's leave period, by virtue of the November 7th phone call.
    The fact question left for the jury was whether Watkins
had "returned from leave" at the time of this phone call and was
therefore eligible for reinstatement.  The district court broke
down this question into three component questions:  (1) whether
Watkins "was physically able to perform essential functions of
. . . an equivalent position . . . at the end of the twelve-week
period," (2) whether he "did not voluntarily resign," and (3)
whether he did not prevent J&S from carrying out its FMLA
obligations by his own "actions or inactions."  The jury answered
each of these questions in the affirmative, and there was
sufficient evidence to support its conclusions.  Thus, we find that
the district court did not abuse its discretion in refusing to
vacate the verdict based on the argument that Watkins had failed to
"return from leave" under 29 U.S.C.  2614(a)(1).

           II.  WATKINS'S MOTION FOR SUMMARY JUDGMENT
A.  ADA Claim
    The district court made the following findings with
respect to the ADA claim:
    1.   Plaintiff did not provide J&S with
         adequate medical certification
         regarding his condition and ability
         to return to work within the meaning
         of ADA requirements.

    2.   J&S made offers of other positions
         and was not required, for business
         reasons, to hold the vacant position
         open for Watkins.  The employer was
         not required to wait indefinitely
         for plaintiff to show his ability to
         work in his old job or in any
         comparable positions.

    3.   Reasonable accommodation does not
         require leaving a position open or
         filling it temporarily when an
         employer offers uncontradicted
         evidence of the importance of such a
         position to its business, especially
         when the employer has no way of
         knowing when, or even if, the
         employee will return to work.  
         Monette v. Electronic Data Systems
         Corp., 90 F.3d 1173, 1187-88 (6th
         Cir. 1996).

    4.   Plaintiff, in failing to provide his
         employer with any information
         regarding his ability to return,
         demands what certainly amounts to
         "indefinite leave."  Such an
         accommodation is not required by the
         ADA.

              . . .

         Defendant has presented a legitimate
         nondiscriminatory reason for replacing
         Plaintiff.  Plaintiff has presented no
         evidence that Defendant's reason was
         merely a pretext for illegal
         discrimination.  Accordingly, Defendant's
         Motion for Summary Judgment as to the ADA
         claim is granted.
    Watkins argues that J&S failed to reasonably accommodate
him by refusing to hold open his position as station manager until
his return from leave.  The district court found that there was "no
direct evidence of discrimination" under the Act, and that J&S was
not required to hold the managerial position open for an indefinite
amount of time.  The district court determined that Watkins failed
adequately to show that on the date of his replacement that he was
able "to return to work" or "to perform the essential functions of
his job without reasonable accommodation."  The court recognized
that under some circumstances an employer may be required to hold
a position open for some duration as a "reasonable accommodation,"
but when the employee's absence poses an undue hardship on the
employer, then leaving the position open would not be considered to
be "reasonable."  Finally, the district judge determined that
Watkins "never informed [J&S] as to when he might be able to return
or what accommodations he might require"; in effect, he concluded
that Watkins never made a specific reasonable accommodation request
for purposes of the ADA.  The court concluded, furthermore, that
the J&S was not advised with sufficient specificity that in the
"immediate future," Watkins would be able to resume his job or an
equivalent position, citing Myers v. Hose, 50 F.3d 278, 282 (4th
Cir. 1995).  In sum, J&S was not required, for ADA purposes, to
provide accommodation to Watkins for what amounted to an
"indefinite leave."  See Monette v. Electronic Data Systems, 90
F.3d 1173, 1187-88 (6th Cir. 1996); Rogers v. International Marine
Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996); Hudson v. MCI
Telecommunications, 87 F.3d 1167, 1169 (10th Cir. 1996).  
    Watkins argues in his brief that job termination alone
involves such psychological stress that he has presented a case for
jury determination.  He cites no case in support of that
proposition.  Watkins complains that other than his FMLA damages he
is left without a remedy.  We impose no further requirement on the
employer, under the circumstances of this case, to afford
additional accommodation to Watkins whose ability to return to
service when he was replaced was, at best, indefinite.
    The difficulty in this case is allowing the recovery of
substantial damages under the FMLA based on the jury verdict, while
at the same time affirming the summary judgment in favor of J&S on
Watkins's ADA claim.  We agree with the district court that while
these causes of action may interrelate, they involve separate and
distinct statutory claims.  There is a paucity of authority on the
FMLA, and we have concluded that material factual controversies
existed for a factfinder to decide.  We concede particular
difficulty with the jury finding that Watkins was able to perform
the essential functions of an equivalent position in early
November, 1994.  We resolve the difficulty by giving Watkins the
benefit of doubt and leaving this issue within the province of the
jury.  The parties' burdens are different under the two statutory
schemes.  Under the FMLA, J&S was responsible for restoring Watkins
to an equivalent position when his leave expired.  The evidence
supported the jury's determination that it failed in that duty.  
However, under the ADA, Watkins was obligated to request a
reasonable accommodation.  The district court found, as a matter of
law, that Watkins's request that J&S leave his original position
open for an indefinite amount of time was unreasonable.  We affirmboth the jury's verdict and the district court's decision on those
ADA claims.
B.  Emotional Distress Claim
    There is a heavy burden cast upon Watkins on his claim
for emotional distress under Maine law.  He must demonstrate that
he suffered severe stress and that the action of J&S was outrageous
in nature.  See Barnes v. Zappia 658 A.2d 1086 (Me. 1995); see alsoDewilde v. Guy Gannett Publishing Co., 797 F. Supp. 55, 63 (D. Me.
1992).  We find no error in the determination by the district court
that Watkins failed to meet this difficult standard under the
circumstances of this case.  We have affirmed the grant of summary
judgment on the ADA claim for the reasons indicated.  The emotional
distress claim is interrelated with the ADA claim with respect to
the termination.  We affirm the judgment on count three.

                        III.  CONCLUSION
    For the reasons stated, we affirm the FMLA jury award and
judgment.  We affirm also the district court's grant of summary
judgment in favor of J&S on the ADA claim and the extreme emotional
distress claim.

</body>

</html>