Anna M. LEAVITT, Plaintiff

v.

WAL–MART STORES, INC., Defendant

No. CIV. 02–46–P–H.

United States District Court,
D. Maine.

Jan. 3, 2003.

**314**

Robert W. Kline, Esq., Portland, ME, for Anna M. Leavitt, plaintiff.

Mark V. Franco, Esq., Thompson & Bowie, Portland, ME, for Wal–Mart Stores Inc., defendant.

## DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

HORNBY, District Judge.

Anna Leavitt has sued Wal–Mart Stores, Inc. ("Wal–Mart"). She makes three claims: discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.;* discrimination under the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551, *et seq.;* and intentional infliction of emotional distress. Adverse employment action is a prerequisite to both of the first two claims. Here, Wal–Mart never fired Leavitt. Instead, Leavitt claims that Wal–Mart treated her so badly in failing to accommodate her disability that she had to resign ("constructive discharge"). On cross motions for summary judgment, I conclude that Leavitt cannot meet the standard for constructive discharge, nor the standard for intentional infliction of emotional distress. I therefore GRANT Wal–Mart's motion for summary judgment and DENY Leavitt's motion for partial summary judgment.[1]

---

1. I urge the lawyers for both parties to tone down their rhetoric. It does not contribute to effective advocacy to assert that the other party engaged in "bombast" (plaintiff's lawyer's allegation, Pl.'s Reply Mem. to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Mot. to

## A. DISCRIMINATION

The parties agree that the applicable legal standards are identical under the MHRA and ADA. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2, n. 1:

> Both Plaintiff and Defendant agree that the Court's analysis of Plaintiff's ADA claims is also dispositive of her claims under the Maine Human Rights Act. Plaintiff's Motion for Partial Summary Judgment at 9–10; Defendant's Motion for Summary Judgment at 3, n. 1.

I deal, therefore, with only the federal issue.

According to Leavitt, Wal–Mart subjected her to the following treatment, causing her to resign her position. In April of 1999, Leavitt returned to work at the Falmouth Wal–Mart after recovering from a heart attack. Upon her return and with her agreement, Wal–Mart management transferred her from her old position at an in-store restaurant to a less demanding job in a different department. A few weeks later, Wal–Mart transferred Leavitt to a different department and into a position that required even less physical exertion. Wal–Mart undertook this change on its own. Wal–Mart would not permit Leavitt to park in a handicapped spot until after she obtained a handicapped license plate. Then, she heard comments that she didn't really need a plate and wasn't really handicapped.

Before her heart attack, Leavitt had worked mainly days, but covered the evening shift on occasion. When Wal–Mart made the changes in her work station, however, it also altered her schedule, so that Leavitt began to work almost exclusively evening shifts. She was led to be-lieve that this arrangement would be temporary. Wal–Mart made no attempt, however, to find a new employee to take the evening shifts and allow Leavitt to switch to day hours. Leavitt made several requests, through several different members of Wal–Mart's management team, to have her schedule changed. Nothing was done to accommodate these requests, nor was Leavitt encouraged to change her availability records with the company to indicate that she could not work nights. There is some evidence to show that Leavitt was led to believe that if she insisted upon days-only work, she would not be scheduled at all. Leavitt says that Wal–Mart evening managers often confronted her as she left work, demanding to know why she was leaving early. (Leavitt had a medical excuse, permitting her to work 6–hour shifts.) At least one of the three managers that she worked under on the evening shift never looked at her medical file.

In addition to requesting different hours, Leavitt told management that she would like to transfer to the Windham Wal–Mart, which was closer to her home. The Falmouth store manager, Dale Brann, encouraged her to investigate openings at the Windham location. When she reported to him that spaces were available, however, he took no action to initiate a transfer. Leavitt found the whole situation highly stressful; because of her health problems she became easily fatigued and found the late-evening commute from Falmouth a burden.

Matters came to a head during April and May of 2000. In late April, Leavitt noted a schedule change that allowed her

---

Strike Affs. ("Pl.'s Reply Mem.") at 1) or made an argument that "would waste the Court's time" (*Id.* at 4) or was designed "to insult the intelligence of the reader" (defendant's lawyer's allegation, Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. with Incorporated Mem. of Law at 4) or a "desperate attempt to convince this Court" (*Id.* at 6) or "ridiculous" (*Id.* at 7).

to work two days over the following three weeks. She verified this schedule with Brann. But on May 10, Leavitt discovered that the two day shifts had been taken from her, leaving her once again only evening shifts. Leavitt was not notified or consulted about this change. Leavitt's manager, Gil Olsen, was unresponsive to Leavitt's complaints, informing her rather tersely that the changes would stand. Leavitt was also informed that a new employee had received the day shifts. Insulted that the changes were made unilaterally, humiliated that those shifts had been given to a person with no history at the store, and frustrated with her treatment from Wal–Mart management, Leavitt walked off the job and did not return.

The federal cases in this Circuit are clear on the stringent standard for a claim of constructive discharge: "'Constructive discharge' is a label for treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position," *Melendez–Arroyo v. Cutler–Hammer de P.R. Co.*, 273 F.3d 30, 36 (1st Cir.2001); or working conditions "so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign," *Suarez v. Pueblo International, Inc.*, 229 F.3d 49, 54 (1st Cir.2000); or " 'so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign' "; or "so unpleasant that 'staying on the job while seeking redress [would have been] intolerable.' " *Marrero v.*

*Goya of Puerto Rico, Inc.*, 304 F.3d 7, 28 (1st Cir.2002) (citation omitted). It is an objective standard, not dependent solely on what Leavitt felt or believed, but rather on what a reasonable person in her position would experience. *Id.* Moreover, according to the First Circuit:

> The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins—thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world. Thus, the constructive discharge standard, properly applied, does not guarantee a workplace free from the usual ebb and flow of power relations and inter-office politics.

*Suarez*, 229 F.3d at 54.

I conclude that no reasonable factfinder could conclude that the treatment Leavitt received was so bad that she was compelled to resign rather than stay on the job while seeking redress (such as by suing Wal–Mart for failing to make reasonable accommodations or complaining about her treatment). Since Leavitt has made clear that in this lawsuit she is not claiming damages for her treatment apart from the constructive discharge,[2] I GRANT summary judgment to the defendant on Counts I and II of the Complaint.

**B.** **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**[3]

The standard for successfully pursuing a claim of intentional infliction of

---

2. Despite whatever inferences might be drawn from the Complaint under the liberal pleading rules, the plaintiff states in her reply brief that she "never raised" the claim "that the disability-based harassment she endured at the hands of Defendant's management entitles her to damages under the ADA and or MHRA.... This was not Plaintiff's claim...." Pl.'s Reply Mem. at 1 n. 1.

3. Wal–Mart asserts that the state workers compensation remedy is exclusive, and it may well be correct, but it has neglected to furnish evidence on the summary judgment record that it has "secure[d] the payment of compensation in conformity with [section 401] and sections 402–407" of the Maine Worker's Compensation statute, 39–A M.R.S.A. § 401 (2002), so I can not make a summary judgment ruling on that basis.

emotional distress is high. Leavitt must prove that (1) Wal–Mart intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from the conduct of its employees; (2) that its conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;" (3) those actions caused Leavitt's emotional distress; and (4) the emotional distress suffered by Leavitt was so severe that no reasonable person could be expected to endure it. *Curtis v. Porter*, 784 A.2d 18, 22–23 (Me.2001) (internal quotations omitted).

■ "[I]t is for the Court to determine, in the first instance whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so." *Rubin v. Matthews Int'l Corp.*, 503 A.2d 694, 699 (Me.1986) (quoting Restatement (Second) of Torts § 46, cmt. h (1965)). I conclude that on this record no factfinder could reasonably find that Wal–Mart's conduct met the extreme and outrageous standard.

■ Moreover, "[t]he term 'severe emotional distress' means something more than minor psychic and emotional shocks, something more than the usual and insignificant emotional traumas of daily life in modern society. Severe emotional distress means emotional distress created by the circumstances of the event that no reasonable person could be expected to endure." *Dewilde v. Guy Gannett Pub. Co.*, 797 F.Supp. 55, 62 (D.Me.1992). Wal–Mart's conduct frustrated Leavitt and caused her to feel humiliated, but the distress does not rise beyond the usual emotional traumas of daily life in modern society. Summary judgment is **GRANTED** to the defendant on Count III of the Complaint.

## C. CONCLUSION

Summary judgment is **GRANTED** to the defendant and **DENIED** to the plaintiff. All other pending motions are **MOOT**.

**SO ORDERED.**