**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 03-1190

ANNA LEAVITT,

Plaintiff, Appellant,

v.

WAL-MART STORES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,
Baldock,* Senior Circuit Judge,
and Howard, Circuit Judge.

Robert W. Kline with whom Kline Law Offices was on brief for
appellant.
Mark V. Franco with whom Thompson & Bowie, LLP was on brief
for appellee.

August 27, 2003

*Of the Tenth Circuit, sitting by designation.

**BALDOCK, Senior Circuit Judge**.  Plaintiff Anna Leavitt brought suit against her former employer, Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 - 12213 (2000), and Maine state law.  Leavitt claimed she is a qualified person with a disability as defined by the ADA and that Wal-Mart failed to reasonably accommodate her disability leading to her constructive discharge. On cross-motions for summary judgment, the district court concluded the treatment Leavitt alleged was not sufficiently severe to establish a constructive discharge.  The court also concluded Leavitt was not seeking damages apart from her constructive discharge claim.  Accordingly, the court entered judgment in favor of Wal-Mart on her discrimination claims.[1]

Plaintiff appeals, asserting (1) the district erred in granting Wal-Mart summary judgment on her constructive discharge claim; and (2) the court erred in failing to address her claim that Wal-Mart discriminated against her by failing to provide reasonable accommodations.[2]  We have jurisdiction pursuant to 28 U.S.C. §

---

[1]Leavitt also filed a claim seeking damages for intentional infliction of emotional distress.  The district court granted summary judgment in favor of Wal-Mart on this claim after concluding the treatment Leavitt alleged was not sufficiently extreme or outrageous to permit recovery.  Leavitt does not appeal this ruling.

[2]In the interest of judicial economy, it may have been preferable for Leavitt to bring this alleged error to the attention of the district court by filing a Motion to Alter or Amend Judgment pursuant to Fed. R. Civ. P. 59(e) or a Motion for Relief from

1291.  We affirm the district court's grant of summary judgment on Leavitt's constructive discharge claim, but remand for consideration of Leavitt's reasonable accommodation claim.

## I.

Leavitt worked at the Wal-Mart store in Falmouth, Maine from approximately August 7, 1998 to May 10, 2000.  Shortly after she began her employment, Wal-Mart promoted Leavitt from a sales associate's position to a management position in its in-store restaurant.  Store records indicate Leavitt received positive performance evaluations and was performing all duties satisfactorily.  In March 1999, Leavitt suffered a heart attack.

Leavitt asserts she became disabled within the meaning of the ADA due to health problems associated with the heart attack. As a result of these health problems, Leavitt has difficulty breathing and walking and suffers from increased fatigue and occasional panic attacks. On several occasions, Leavitt's physical condition required her to seek medical attention.  As a result, Leavitt's treating physician documented her condition and placed restrictions on her work, including limits on both the hours she

Judgment pursuant to Rule 60.  But, as Wal-Mart properly conceded at oral argument, there is nothing in either the Federal Rules of Civil Procedure or the Federal Rules of Appellate Procedure that mandate this approach.  Following the district court's entry of final judgment purporting to dispose of all claims, this court had jurisdiction over Leavitt's claim.

can work and the amount of weight she can lift. Leavitt provided this documentation to Wal-Mart.

Upon Leavitt's return to work, Wal-Mart management proposed to transfer her from her former position to a position that would require less physical exertion. After observing that Leavitt still struggled to perform her duties, management proposed a second transfer to a position that required even less physical exertion. Both transfers occurred after discussions with Leavitt and with her consent. Wal-Mart management viewed the transfers as an accommodation for Leavitt's medical condition. Despite transferring Leavitt from a management position to a sales associate position, Wal-Mart did not reduce her hourly wage.

Before her heart attack, Leavitt primarily worked the day shift, but covered the evening shift on occasion. When Leavitt transferred to the new positions, her schedule changed such that she was working almost exclusively evening shifts. Leavitt was led to believe this change would be temporary, but after several months she saw no indication Wal-Mart was attempting to find another employee to cover the evening shifts. Leavitt asserts working evening shifts increased her fatigue, which in turn exacerbated her breathing and walking problems. Leavitt made several requests to various members of the management team in an effort to have her schedule changed. Wal-Mart did not accommodate these requests. There is some evidence Leavitt was led to believe she would not be

scheduled to work at all if she insisted on only working day shifts.

Leavitt lives in Casco, Maine and, after her heart attack, found the lengthy commute to Falmouth increased her fatigue. She informed Wal-Mart management she would like to transfer to a Wal-Mart store located in Windham, Maine, which was significantly closer to her home. The Falmouth store manager encouraged Leavitt to investigate openings at the Windham store, but when she informed him of openings took no action to initiate a transfer.

Leavitt also asserts she experienced some hostile reactions to her disability. Several evening-shift managers repeatedly confronted Leavitt as she left work, demanding to know why she was able to leave early. These confrontations occurred despite documentation in her work file limiting her shifts to six hours. Wal-Mart also would not permit Leavitt to park in a handicapped spot until she obtained a handicapped parking permit. After obtaining the permit, Leavitt endured comments that she wasn't really handicapped and that she must feel entitled to special treatment. Leavitt also asserts her direct supervisor asked her to work hours and perform duties beyond those permitted by her documented medical restrictions. These requests continued even after Leavitt informed the supervisor of her medical condition.

Finally, in late April, Leavitt received notice of a schedule change that allowed her to work two day shifts over the next three-week period. She verified the schedule change with the store manager. But Leavitt's direct supervisor subsequently assigned the day shifts to another employee once again leaving Leavitt with only evening shifts. Leavitt confronted the supervisor about the schedule change, but the supervisor made it clear the change would stand. After discussing the matter with her supervisor, Leavitt believed Wal-Mart would fire her if she did not comply with the change. She also discovered that her day shifts had been assigned to a new, non-disabled employee. The schedule change directly conflicts with Wal-Mart's stated scheduling policy, which reserves coveted day-time shifts for employees with more seniority and requires a manager to consult with an employee prior to implementing a schedule change.

Frustrated with Wal-Mart's refusal to accommodate her requests for a schedule change or a store transfer, and frustrated with her supervisor's failure to comply with store policy concerning scheduling, Leavitt terminated her employment with Wal-Mart.

## II.

Leavitt first asserts the district court erred in granting summary judgment on her constructive discharge claim. We review de novo the district court's grant of summary judgment,

viewing the evidence and all reasonable inferences in the light most favorable to the non-moving party. See Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 (1st Cir. 2002).

Constructive discharge is a label for "treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position." Mesendez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 36 (1st Cir. 2001). The standard is an objective one: the conditions must be so difficult or unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign. Marrera v. Goya of Puerto Rico, Inc., 304 F.3d 7, 28 (1st Cir. 2002) (citing Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000) (additional citation omitted)). Properly applied, this standard "does not guarantee a workplace free of the usual ebb and flow of power relations and inter-office politics." Suarez, 229 F.3d at 54. Rather, the plaintiff must establish that "working conditions were so unpleasant that staying on the job while seeking redress would have been intolerable." Marrera, 304 F.3d at 28 (quoting Keeler v. Putnam Fid. Trust Co., 238 F.3d 5, 10 (1st Cir. 2001) (internal quotations omitted)).

A constructive discharge can arise from, among other things, "reassignment with significantly diminished job responsibilities, or a decision causing a significant change in benefits." See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). However, a reduction in responsibility, unaccompanied

by a diminution in salary or some other marked lessening of the quality of working conditions, does not constitute a constructive discharge.  See Suarez, 229 F.3d at 55.

There is no evidence Leavitt's job transfers were anything other than a desired accommodation of her health problems. Leavitt also does not claim Wal-Mart reduced her hours or her hourly wage.  Leavitt's only complaints, that Wal-Mart failed to accommodate her requests for a transfer and for more day shifts, and failed to follow policy in awarding day shifts, are not so severe and did not produce working conditions so unpleasant that staying on the job would have been intolerable.  Leavitt did not produce any evidence that working evening shifts and commuting to Falmouth had a dramatic impact on her health conditions or that she was unable to continue her work.  Accordingly, the district court did not err in granting summary judgment on this claim.

III.

Leavitt next asserts the district court erred in failing to consider her reasonable accommodation claim.  After resolving the constructive discharge claim, the district court stated:

> Since Leavitt has made clear that in this lawsuit she is not claiming damages for her treatment apart from the constructive discharge, I grant summary judgment to the defendant on [both discrimination counts].

Leavitt v. Wal-Mart Stores, Inc., 238 F. Supp. 2d 313, 316 (D. Me. 2003 (footnote omitted).  The court based this conclusion on a

-8-

footnote in Leavitt's reply brief to her motion for summary judgment. Id. at 316 n.2. In that footnote, Leavitt noted:

> Defendant has moved for summary judgment, or to dismiss, a "claim" that Plaintiff never raised; that the disability-based harassment she endured at the hands of Defendant's management entitles her to damages under the ADA or MHRA. This was not Plaintiff's claim; Plaintiff mentioned the incidents in her Statement of Material Facts Not in Dispute in order to show *inter alia*, Defendant's awareness of Plaintiff's disability and resulting restrictions; the stress and frustration this caused Plaintiff and as direct and circumstantial evidence of Defendant's discriminatory animus towards her based on her disability.

Appendix at 214-15(italics in original, citations omitted). This footnote appeared in response to Wal-Mart's brief in opposition to plaintiff's motion for partial summary judgment. In that brief, Wal-Mart argued:

> It also appears that the Plaintiff's Motion for Partial Summary Judgment, for the first time, alleges that Defendant engaged in disability based harassment by Wal-Mart management. However, nowhere in Plaintiff's initial Complaint was there an allegation (or inference) that the Plaintiff was the subject of disability based harassment. At the outset, therefore, Defendant requests the Court to dismiss this claim...."

Appendix at 200 (citations and emphasis omitted). In support of the district court's grant of summary judgment, Wal-Mart argues both that Leavitt failed to raise a reasonable accommodation claim in the proceedings before the district court and that, even if raised, the district court correctly concluded Leavitt expressly waived the claim based on the referenced footnote.

-9-

Leavitt raised the claim in both her pleadings and motion briefs. In her complaint, Leavitt clearly pled failure to accommodate as a ground for recovery. In Count I, Plaintiff's complaint asserts Wal-Mart engaged in disability-based discrimination in violation of the ADA. This Count raises two distinct theories of recovery under the ADA: a claim that Wal-Mart failed to provide reasonable accommodation and a claim that this failure lead to Plaintiff's constructive discharge. Paragraph 29 of the Complaint states:

> Wal-Mart failed to provide Plaintiff with a reasonable accommodation because of her disability. The record establishes that Plaintiff is an otherwise qualified individual with a disability, entitled to reasonable accommodations to her known physical limitations. Plaintiff sought these reasonable accommodations – being assigned to the Fitting Department, having her shifts occur during the day and a transfer to a location closer to her home. Wal-Mart refused to take these simple steps to accommodate Plaintiff solely because of her disability.

Appendix at 11. This paragraph states a claim separate and distinct from Leavitt's constructive discharge claim, which appears in Paragraph 28 of the Complaint.

Plaintiff also performed discovery on the reasonable accommodation claim, and dedicated a section of her Statement of Material Facts to this claim. See Appendix at 33 (Section titled "Wal-Mart Refuses to Reasonably Accommodate Plaintiff's Requests to either be Rescheduled to the Day Shift in Falmouth, or to be Transferred to its Windham Store"). Plaintiff also raised the

issue in her motion for partial summary judgment by seeking summary judgment on Wal-Mart's affirmative defense that it had provided reasonable accommodations.  Appendix at 125.

Defendant clearly was on notice of Leavitt's reasonable accommodation claim.  In its motion for summary judgment, Wal-Mart describes Count I of Leavitt's Complaint as asserting both a failure to accommodate and a constructive discharge claim:

> Count I, in essence, alleges . . . that Defendant failed to provide her with a reasonable accommodation because of her disability and that Wal-Mart constructively terminated Plaintiff's employment in whole or in part because of her disability.

Appendix at 161.  The brief goes on to discuss both claims.  See Appendix at 171.  Wal-Mart clearly recognized Plaintiff's complaint plead two alternative grounds for recovery under the ADA.

Plaintiff also expressly opposed Wal-Mart's motion for summary judgment on her failure to accommodate claim.  See Appendix at 188-192 (Section titled "Defendant is not entitled to Judgment as a matter of law on Plaintiff's claim that it failed to reasonably accommodate her disability or discriminated against her because of her disability").  This argument is distinct from the following section which opposes summary judgment on "Plaintiff's claim that [Wal-Mart] constructively terminated her employment." Appendix at 192.  Thus, we reject Wal-Mart's argument that Leavitt did not raise or preserve a failure to accommodate claim.

We also conclude the district court erred in interpreting the footnote as an express waiver of Leavitt's failure to accommodate claim. As is clear from the briefs, Leavitt stated only that she was not asserting a separate disability-based harassment claim.[3] This footnote cannot reasonably be read to waive Leavitt's reasonable accommodation claim, given that she expressly pled the claim and dedicated a significant portion of her response brief opposing summary judgment on this claim.

Accordingly, we reverse the district court's entry of summary judgment on Count I of Plaintiff's complaint.[4] We express

_____

[3]Although the First Circuit has yet to address the issue, several other Circuit courts recently have recognized a cause of action for disability-based harassment under the ADA. Such actions permit recovery based on a plaintiff's exposure to a hostile work environment, and arise independently of claims based on the employer's failure to provide reasonable accommodations. To succeed on this claim, a plaintiff generally must demonstrate (1) that she was disabled as defined by the ADA; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. See, e.g., Gowesky v. Singing River Hosp. Systems, 321 F.3d 503, 509 (5th Cir. 2003); Fox v. General Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001); Keever v. City of Middletown, 145 F.3d 809, 813 (6th Cir. 1998); Cody v. CIGNA Healthcare, 139 F.3d 595, 598 (8th Cir. 1998); see also Silk v. City of Chicago, 194 F.3d 788 (7th Cir. 1999) (assuming, without deciding, that such a claim is legally cognizable under ADA); Walton v. Mental Health Ass'n, 168 F.3d 661, 666-67 (3d Cir. 1999) (same).

[4]Count II asserts violations of the Maine Human Rights Act and pleads only Plaintiff's constructive discharge as grounds for recovery. Accordingly, the district court properly granted summary judgment as to Count II.

no opinion on the merits of Leavitt's reasonable accommodation claim or of the arguments made in the cross-motions for summary judgment. We remand to the district court for consideration of this claim in the first instance.

## IV.

For the reasons stated, we AFFIRM the district court's grant of summary judgment on Plaintiff's constructive discharge claims. We VACATE the district court's entry of summary judgment on Count I of the complaint and REMAND with instructions to consider Plaintiff's reasonable accommodation claim.